UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAEED PIROOZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  4:05MC00521CDP |
| | ) | |
| MEMC ELECTRONIC MATERIALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT OF
PLAINTIFF'S COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARD**

COMES NOW Plaintiff Saeed Pirooz, and for his Memorandum in Opposition to

Plaintiff's Motion to Vacate Arbitration Award and Memorandum in Support of Plaintiff's

Complaint for Confirmation of Arbitration Award, states as follows:

## I. INTRODUCTION

In this case, Plaintiff Saeed Pirooz ("Pirooz") seeks the Court's confirmation of an

Arbitration Award, entered July 8, 2005, in which Arbitrator John Gianoulakis determined that

Pirooz did not violate restrictive covenants contained in an agreement with Defendant MEMC

Materials, Inc. ("MEMC"), Pirooz's former employer.  The Agreement contained a provision

purporting to provide for the forfeiture of severance pay and other benefits in the event of a

breach of the Agreement by Pirooz.  The Arbitrator rejected MEMC's attempt to obtain such a

forfeiture from Pirooz on the basis that Pirooz did not breach the Agreement.  Arbitrator

Gianoulakis also found that it would in any event be inequitable to award a forfeiture of Pirooz's

severance benefits to MEMC under the circumstances of the case.  Pirooz was further awarded

attorneys' fees and costs defending the action.  Despite the clear and well-reasoned award

entered by the Arbitrator, MEMC failed and refused to pay Pirooz in compliance with the
Award.  On August 29, 2005, Pirooz filed his Complaint for Confirmation of the Arbitration
Award.  MEMC filed its Motion to Vacate the Arbitration Award on October 7, 2005.

As established herein, MEMC waived its ability to have the Award vacated on the bases
it now advances.  Indeed, MEMC presents new theories and arguments never presented to the
Arbitrator which, pursuant to an abundance of authority, cannot not be the basis of any judicial
review of the Award.  In particular, MEMC never cited to legal authority and never argued in the
Arbitration that attorneys' fees were not recoverable by Pirooz should he prevail (despite
Pirooz's continuous request of fees throughout the Arbitration process).  Moreover, MEMC
never argued or cited to any authority for the proposition that equitable principles could not be
applied to deny enforcement of the forfeiture provision against Pirooz (despite Pirooz's
vociferous insistence throughout the Arbitration that a forfeiture would be inequitable and should
not be awarded for that reason).  MEMC is barred from making these arguments now.  The
practical effect of such waivers, as explained further herein, is that MEMC necessarily cannot
prevail on its Motion to Vacate the Arbitration Award.

In addition to the reason that MEMC waived its arguments, MEMC's Motion should also
be denied because it flies in the face of the extraordinary level of deference a District Court is
required to give with respect to all aspects of an arbitration award (*e.g.*, findings of fact,
conclusions of law and contract interpretation).  In particular, MEMC severely understates the
mandatory level of deference and ignores, and fails to cite, recent Eighth Circuit precedent, with
the result being MEMC's failure to properly address the actual standards of review involved (not
to mention MEMC's heavy reliance on case law *outside* of the Eighth Circuit that is either highly
distinguishable or actually *supports* Pirooz's position that the Arbitration Award should be

confirmed by this Court).  In addition, MEMC states as "facts" matters purportedly material to

its Motion to Vacate that were *never* presented to the Arbitrator and which, in any event, are not

true.  Moreover, MEMC failed to inform this Court of the extremely broad scope of authority

possessed by the Arbitrator in this matter, which permitted him to fashion any relief he deemed

"just and equitable."

      In fact, Arbitrator Gianoulakis issued a well-reasoned, thorough Arbitration Award.  He

held that Soitec USA, Inc. ("Soitec"), which Pirooz joined *15 months* after his termination

without cause from employment with MEMC, was *not* a competitor with MEMC during the

relevant time period under the covenant not to compete at issue.  The Arbitrator noted, in part,

that Pirooz's employment with Soitec was of so little concern and so non-threatening to MEMC

that MEMC never even sought injunctive relief to prevent his employment with Soitec, and, in

fact, did not even seek to submit the matter to Arbitration until after the purported two-year non-

compete period in the parties' agreement had expired.  Arbitrator Gianoulakis also found, in part,

that MEMC's own internal documents never identified Soitec as a competitor, although

identifying other manufactures as competitors.  He further found that it would in any event be

inequitable to order a forfeiture of over $300,000 in alleged benefits to Pirooz under the facts of

the case.  Given the extraordinary level of deference accorded to the Award, there is simply no

basis for its vacatur.

      MEMC also makes the frivolous argument that Arbitrator Gianoulakis' Award must be

vacated because it is not definite and final.  In fact, Arbitrator Gianoulakis' award far exceeds the

standards of finality and definiteness as articulated in the case law.  Ironically, the lone case cited

by MEMC in support of its argument very clearly and unequivocally renders MEMC's position

frivolous and, it would seem, in bad faith.

As set forth herein, MEMC has filed what amounts to a factually incorrect and legally baseless Motion to Vacate.  The only explanation for MEMC's Motion is its determination to exact punishment against Pirooz.  Indeed, MEMC, which had net sales of over $1 billion last year alone, pursued this matter by hiring a plaintiff's attorney on a contingent fee basis in its attempt to obtain an arbitration award against Pirooz for the forfeiture of over $300,000 in benefits he allegedly received from MEMC.  What MEMC apparently thought was a no-lose situation – because it would only have to pay its attorney if it won – resulted in an Award *against* MEMC and in favor of Pirooz for $113,482.19, representing most of the attorneys' fees and costs incurred by Pirooz defending the punitive action.  MEMC is the one that chose to resolve the underlying dispute quickly through arbitration, choosing the tremendously broad employment dispute rules of the American Arbitration Association as applicable to any dispute, and now wants this Court to undo that decision and permit it to continue its efforts to exact punishment against Pirooz for his acceptance of employment with Soitec.

Arbitrator Gianoulakis already rejected MEMC's arguments (at least the ones that were made) and its attempt to punish Pirooz in a well-reasoned, thorough Arbitration Award, in which he clearly and explicitly found that Pirooz had not breached the purported restrictive covenants in his General Release and Waiver Agreement (hereinafter the "General Release" or "Agreement").  MEMC now asks the Court to save it from its ill-advised persecution of Pirooz and to permit it to continue its aggressive pursuit of him in federal court litigation, a recourse that it earlier insisted (in the General Release it prepared and presented to Pirooz) could not be pursued.

For the reasons stated herein, and pursuant to very clear Eighth Circuit authority in this area of law, the Court should deny MEMC's Motion to Vacate, enter judgment in favor of Pirooz

on the Arbitration Award, and further award prejudgment interest to Pirooz, along with costs and attorneys' fees incurred pursuing confirmation of the Award and the defense of MEMC's frivolous Motion to Vacate.[1]

## II.  **BACKGROUND**

Pirooz is a former Vice President and Chief Technology Officer of MEMC, and was sued by MEMC in Arbitration under the terms of his General Release and Waiver Agreement (hereinafter, "General Release" or the "Agreement").  Ex. 1, Arb. Award; Ex. 5, MEMC Arb. Demand, p. 1, Pirooz Compl. for Conf., ¶¶ 7 – 14.  MEMC alleged Pirooz had violated restrictive covenants to which he was bound by accepting employment with an alleged competitor, Soitec.  Ex. 5, pp. 3-4.  In the Arbitration, MEMC sought the forfeiture of over $300,000 in alleged severance payments and other benefits to Pirooz as a result of Pirooz's alleged breach, as well as prejudgment interest and attorneys' fees.  Ex. 1, p. 2; Ex. 5, pp. 3-4. The total judgment sought by MEMC on a contingent fee basis exceeded $380,000.  Ex. 1, p. 2; Ex. 5, pp. 3-4.

Pirooz's employment was terminated without cause by MEMC on July 30, 2002.  Ex. 1, pp. 3-4.  Pirooz accepted employment with Soitec fifteen (15) months after his termination from employment with MEMC.  *Id.*  The restrictive covenants to which MEMC alleged Pirooz was bound purported to provide for a two-year restriction on working for a competing business.  *Id.* at p. 2 (quoting restrictive covenant).  However, as found by the Arbitrator, MEMC failed to prove that Pirooz's new employer, Soitec, was a competitor during the relevant time period, as defined in the General Release.  *Id.* at pp. 3-7.  Importantly, the Arbitrator held that MEMC's conduct and own internal documents indicated that even it did not truly believe Pirooz was

---

[1]  Pirooz requested attorneys' fees, costs and prejudgment interest in its Complaint for Confirmation of the Arbitration Award, which was filed with the Court on August 29, 2005.

working for a competitor.  *Id.* at p. 5.  For example, the Arbitrator noted that MEMC never sought an injunction and failed to even initiate the Arbitration action against Pirooz until the two-year restricted period expired, despite knowing at or near the time of his hiring that Pirooz was working for Soitec.  Ex. 1, at pp. 7-8; Pirooz Compl., ¶ 13.  The Arbitrator also found that MEMC never identified Soitec as a competitor in its own internal documents purporting to identify the competition, while at the same time MEMC identified several other entities as competitors.  *Id.* at pp. 5-8.  More importantly, in the Arbitration, Pirooz introduced evidence that MEMC and Soitec were not in competition during the relevant time period, as defined in the Agreement.  Ex. 1, pp. 4-7; Ex. 2; pp. 3-4; Ex. 3, pp. 1-3, 8-11; Ex. 4, pp. 1-26.  Although MEMC argued and purported to introduce evidence to the contrary, the Arbitrator agreed with Pirooz, denying MEMC's claims in their entirety.  Ex. 1, pp. 3, 9.  In particular, the Arbitrator found that, during the time period that Pirooz worked for MEMC, MEMC did not produce, or have the capability of producing, SOI (silicon on insulator) wafers, which is the product manufactured and sold by Pirooz's new employer, Soitec.  *Id.* at pp. 4-7.  It was only after Pirooz's departure from MEMC that it even attempted to qualify itself as a supplier of SOI wafers.  *Id.*  Arbitrator Gianoulakis found that, through the date of the hearing, MEMC had yet to produce SOI wafers that were of a quality ready for sale or qualification for use by any customer. *Id.* at pp. 4-5.  The Arbitrator further found that one of the last acts by Pirooz as an employee of MEMC in June 2002 was to call on Soitec to determine if Soitec would *purchase MEMC's products*.  *Id.* at p. 5.  Thus, "MEMC viewed Soitec as a potential customer for MEMC's silicon substrate and/or perhaps for (EPI) wafers."  *Id.*  Arbitrator Gianoulakis succinctly noted that "[i]t is unusual, to say the least, for a company like MEMC to attempt to sell its products to a

'competitor.'"  *Id.*  It was largely based on these facts that the Arbitrator found that MEMC and Soitec were not competitors under the restrictive covenants at issue.[2]

The Arbitrator also noted that, in any event, Pirooz was entitled to engage in work that was defined as "competitive" with MEMC under the Agreement, as follows:

> [Pirooz] shall be permitted to engage in [competitive work], and MEMC shall furnish [Pirooz] written consent to that effect signed by an officer, if [Pirooz] shall have furnished to MEMC clear and convincing written evidence, including assurances . . . that the fulfillment of [Pirooz's] duties in such [competitive work] would not likely cause [him] to disclose, base judgments upon, or use any confidential information [of MEMC]."

Ex. 1, p. 4 (quoting Agreement).  The Arbitrator found that MEMC failed to give express consent and failed to even respond to Soitec's and Pirooz's correspondence in which they attempted to provide the assurances required by the Agreement.  The Arbitrator further found it compelling that, at the same time, MEMC failed to even attempt to enforce the restrictive covenants against Pirooz.  *Id.* at p. 7.

Arbitrator Gianoulakis very clearly considered the very facts MEMC now claims he failed to consider (except, of course, those that MEMC never presented at the Arbitration),

---

[2]  Arbitrator Gianoulakis rationally concluded that MEMC's failure to pursue injunctive relief was evidence that even MEMC believed Soitec was not a "competitor."  If MEMC, a billion dollar company, believed that Soitec was a competitor during the relevant time period or thought that Pirooz had the intention or ability to cause it harm by working for Soitec, MEMC would not have failed to attempt to obtain an injunction against Pirooz to prevent his employment with Soitec.  When considering the financial wherewithal of the companies involved, it defies logic to believe MEMC would simply attempt to recover a few hundred thousand dollars, which in turn would be subject to its contingent fee arrangement with its attorney (Ex. 1, p. 9), if it believed Soitec was a true competitor or that Pirooz could cause any damage to MEMC by virtue of his employment with Soitec.  Indeed, if one were to believe some of MEMC's arguments at Arbitration (without the benefit of Pirooz's response), one might conclude that Pirooz has the ability to harm MEMC to the tune of at least millions, if not hundreds of millions, of dollars.  *See*, *e.g.*, Ex. 10, MEMC Interrog. Answers, ¶¶ 6, 15-18.  Thus, MEMC's non-pursuit of injunctive relief, and pursuit of what is comparatively a paltry penalty against Pirooz (although significant to Pirooz) through a contingent fee arrangement with its attorney, defies logic and contradicts the notion that there was true competition between MEMC and Soitec during the relevant time period.

holding that during the relevant time period, "there was no evidence that MEMC was in competition (and certainly not in material competition) [with Soitec]" under the terms of the General Release Agreement.  Ex. 1, p. 6.  MEMC simply "failed to carry its burden of proving that, while [Pirooz] worked for MEMC, it had a product, process, apparatus, service or development 'then competitive with or similar to a product' sold by Soitec."  *Id.* at p. 5.

Pursuant to his broad arbitral authority (see *infra*), Arbitrator Gianoulakis further found that it would be inequitable to award a forfeiture of benefits against Pirooz under the circumstances of the case.  Ex. 1, pp. 7-8.  Pirooz argued in both his pre- and post-arbitration briefs that such a forfeiture amounted to a penalty and that it would be inequitable to order it. Ex. 3, pp. 3-4, 13-15; Ex. 4, pp. 24, 34-37.[3]  During the Arbitration process, MEMC never presented any argument that the Arbitrator's use of equitable principles in making his decision would somehow be improper or contrary to the law.  Rather, MEMC argued that it *would*, in fact, be equitable to award a forfeiture and that a penalty was appropriate because the parties purportedly contracted for it.  MEMC further simply argued that MEMC and Soitec were competitors under the terms of the Agreement.  Ex. 6, MEMC Pre-Arb. Br., pp. 1-9; Ex. 7, MEMC Post-Arb Br., pp. 6-20.[4]

---

[3]   Rather than fully re-hash its arguments made at Arbitration here, Pirooz directs the Court to his pre- and post-arbitration briefs, which are filed herewith as Exhibits 3 and 4, respectively. Although MEMC also filed Pirooz's briefs as exhibits, the copies filed by MEMC were with some of the text being cut off.

[4]   MEMC has stated to the Court that the Arbitrator never found that MEMC breached the General Release and that, as a result, could not award attorneys' fees to Pirooz.  MEMC Memo. in Supp., p. 28.  In fact, although such a finding was not required, Arbitrator Gianoulakis appeared to hold that MEMC did breach the General Release by failing to consent to Pirooz's employment with Soitec or, at the very least, to even respond to the assurances that were given.  Ex. 1, p. 7.  Moreover, even had the Arbitrator not held that Soitec breached the Agreement, it was still proper to award attorneys' fees because the Agreement very clearly provides that fees were available to a prevailing party "*defending*" litigation under the Agreement.  *Id.* at p. 9 (quoting and analyzing attorneys' fees provision).

Arbitrator Gianoulakis further awarded Pirooz $113,482.19, representing most of his attorneys' fees and costs expended defending the litigation.  Award, pp. 9-11.  Contrary to MEMC's false assertions otherwise (MEMC Memo. in Supp., pp. 28-29), Pirooz continuously requested attorneys' fees in this matter, including in its Answer to MEMC's Demand for Arbitration, its Pre- and Post-Arbitration Briefs and orally at the Arbitration hearing..  Ex. 2, pp. 5-6; Ex. 3, p. 15; Ex. 4, pp. 40-46.  The Arbitrator, in turn, based his award on the attorneys' fees provision found in the General Release, which the Arbitrator interpreted to provide that a prevailing party can recover fees expended *defending* a claim under the Agreement.  Ex. 1, pp. 9-11 (note emphasis of Arbitrator there indicating his interpretation of Agreement).  MEMC *never* argued to the Arbitrator, in its briefs or orally, that attorneys' fees would not be recoverable by Pirooz if he were to prevail.  *See generally* Exs. 6, 7.  Rather, MEMC was so intent on punishing Pirooz that it instead focused solely on its own purported right to attorneys' fees to cover the contingent fee arrangement it had with its attorney.  Ex 6, pp. 9-10; Ex. 7, pp. 18-20.

The Arbitrator's Award was entered July 8, 2005, at which time Arbitrator Gianoulakis directed MEMC to make full payment of the Award to Pirooz within 30 days.  Pirooz Compl., ¶ 20.  MEMC has failed and refused to pay Pirooz as directed by the Arbitrator.  Pirooz Compl, ¶ 23.  As a result of MEMC's failure and refusal to pay, Pirooz filed his Complaint for Confirmation of Arbitration Award with the Court on August 29, 2005.  MEMC never responded to Pirooz's Complaint, but filed its Motion to Vacate on October 7, 2005.

---

It would be practically impossible for there to be a situation in which one party collects fees *defending* a claim in arbitration based only on the contract breach of the *complaining* party. Pirooz was also entitled to attorneys' fees for all of the additional reasons argued in his Post-Arbitration Brief, which are incorporated herein by reference.  Ex. 4, pp. 40-46.

### III.  STANDARD OF REVIEW OF AN ARBITRATION AWARD

MEMC alleges that its Motion to Vacate should be granted under the Federal Arbitration Act ("FAA"), which provides, in pertinent part, that an award may be vacated by a district court when the moving party proves that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a).  However, MEMC has severely understated the meaning of this provision of the FAA and the overall standard of review in this matter.  MEMC Memo., pp. 12-14.[5]

When the losing party in an arbitration files a motion to vacate the arbitration award under the FAA, the district court must accord "an extraordinary level of deference" to the underlying award.  *Electrolux Home Products v. The United Automobile Aerospace & Agricultural Implement Workers of America*, 416 F.3d 848, 853 (8th Cir. 2005) (internal quotations and citations omitted); *see also Stark v. Sandberg Phoenix & Von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004) (internal citations omitted).  "[F]ederal courts are not authorized to reconsider the merits of an arbitral award '**even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract**.'"  *Stark*, 381 F.3d at 798 (quoting *Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B*, 284 F.3d 821, 824 (8th Cir. 2002)) (emphasis added); *see also Electrolux Home Products*, 416 F.3d at 853.

---

[5]   MEMC alleges that the Award must be vacated pursuant to 9 U.S.C. § 10(a)(4).  MEMC Memo., p. 1.  Importantly, MEMC has not asked that the Award be modified under the FAA.  Thus, the district court must "take the award as it finds it" and must either confirm the Award in its entirety or vacate it altogether under 9 U.S.C. § 10(a).  *Stark v. Sandberg Phoenix & Von Gontard, P.C.*, 381 F.3d 793, 799 (8th Cir. 2004) (internal citation and quotations omitted).

Furthermore,

> an award **must be confirmed** even if a court is **convinced** the arbitrator committed a serious error, so "long as the arbitrator **is even arguably construing or applying the contract and acting within the scope of his authority**."

*Stark*, 381 F.3d at 798 (emphasis added); *see also Electrolux Home Products*, 416 F.3d at 853. Thus, a district court "[does] not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Id.* at 853 (quoting *Bureau of Engraving*, 284 F.3d at 824-25) (internal quotations omitted). "While this standard may seem harsh to parties who lose in arbitration, this standard is justified because it is exactly what the parties mutually agreed upon by electing arbitration over judicial resolution of their conflicts." *Id.* (internal citation omitted).

In addition to the grounds provided in the FAA (9 U.S.C. § 10(a)(4)), and subject to the general principles delineated above, a district court may vacate an arbitration award if the award is "completely irrational"[6] or "evidences a manifest disregard for the law." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (quoted in *Stark*, 381 F.3d at 799). As succinctly stated by the Eighth Circuit Court of Appeals:

> These extra-statutory standards are **extremely narrow**: An arbitration decision may **only** be said to be irrational where it **fails to draw its essence from the agreement**, and an arbitration decision **only** manifests disregard for the law where the **arbitrators clearly identify the applicable governing law and then proceed to ignore it**.

---

[6]   It would appear that the analysis of the "completely irrational" standard overlaps with and is necessarily met so long as the arbitrator was within his authority in issuing his award. MEMC appears to agree with this, as MEMC collapses the two standards into a single analysis in its Memorandum in Support. MEMC Memo., pp. 25-26, 28-30. However, in this case, it does not matter whether the analyses are collapsed together or viewed as distinctly separate. As set forth herein, Arbitrator Gianoulakis acted within his authority and his award was not "completely irrational."

11

*Hoffman*, 236 F.3d at 461-62 (citing *Stroh Container Co. v. Delphi Industries*, 783 F.2d 743, 749-50 (8th Cir. 1986)) (emphasis added).

Moreover, and importantly, MEMC "cannot challenge [in the district court] what [it] failed to challenge before [the Arbitrator]." *Zingg v. Dept. of the Treasury, IRS*, 388 F.3d 839, 843 (Fed.Cir. 2004). Indeed, in the face of MEMC's failure to make any argument in the Arbitration concerning the application of equitable principles to deny the award of a forfeiture (as argued by Pirooz) or any argument against Pirooz's request for attorneys' fees, the District Court cannot consider any alleged error in the Arbitrator's decision based on such arguments, "for [they are] **deemed waived**." *Id.* (quoting *White v. Dep't of Justice*, 328 F.3d 1361, 1372 (Fed.Cir. 2003)) (internal quotations omitted) (emphasis added). *See also Int'l Brotherhood of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1101 (8th Cir. 2004) ("if a party who contests the merits of an arbitration award in court fails to first present the challenges on the merits to the arbitrators themselves, review is compressed still further, **to nil**") (internal quotations and citations omitted) (emphasis added); *Ganton Technologies, Inc. v. Int'l Union, United Auto., Aero., and Agricult. Workers of Amer., U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) ("[t]he failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award," even where the party presents facts at arbitration that would form the basis of such an argument) (internal citations omitted); *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 673-74 (5th Cir. 2002) ("parties [in an arbitration] must insist upon the enforcement of their contractual rights before the arbitrators as they do in court," and "[t]his is especially true if any case is to be made, under the exceedingly narrow statutory standards, for a later judicial review of the arbitration"); *Sphere Drake Ins. Ltd. v. All Amer. Life Ins. Co.*, 2004 WL 442640, *10 (N.D.IL March 8, 2004) (party's failure to

argue theories of part performance and estoppel in arbitration contract action constituted waiver of those arguments for purposes of motion to vacate) (internal citations omitted).[7]

In addition, the parties opted not to have the Arbitration Hearing transcribed, leaving the Court only with the parties' arbitration briefs, exhibits cited in the briefs and the Arbitrator's Award as the only record of the proceedings.  Any attempt by MEMC to introduce arguments or facts not a part of that record should therefore be disregarded by the Court.

In that regard, it bears noting that MEMC's recitation of facts underlying the arbitrated dispute in its Memorandum in Support of its Motion to Vacate is largely inappropriate.  To the extent MEMC has introduced new facts or introduces a new "spin" on the facts not contained in its arbitration briefs, such facts should not and cannot be considered by the Court.  By way of example only, MEMC claims in its Memorandum in Support that Pirooz "authored" two documents entitled, "MEMC: SOITEC Bernin" and "MEMC: SOI Business Plan."  MEMC Memo., p. 8, citing MEMC Exs. 24, 25.  In fact, Pirooz (1) did not author those documents, (2) believes MEMC's characterization of the meaning and import of the documents to be false, and (3) was even on vacation when one of those documents was allegedly produced and presented. With respect to MEMC Exhibit 25 ("MEMC: SOI Business Plan"), MEMC has submitted an incomplete exhibit to the Court, which allowed MEMC to obscure the fact that the document was actually prepared by MEMC "Business Development," not by Pirooz, and was e-mailed *to Pirooz* on July 29, 2002 (while he was on vacation), and just one day prior to the termination of his employment by MEMC on July 30, 2002.  Pirooz files under seal herewith the accurate and complete MEMC Exhibit 25, which had been marked as Arbitration Exhibit 19 by MEMC in the Arbitration.  Ex. 17, filed under seal.

---

[7]   *Sphere Drake Insurance* is filed herewith as Exhibit 14.

Indeed, there were several instances in the arbitration hearing in this matter in which MEMC made fantastically false charges about Pirooz's role and knowledge with respect to purported SOI technology at MEMC. Pirooz challenged such charges at the Arbitration and, as is now apparent, the Arbitrator did not consider MEMC's allegations credible. Moreover, as stated, there is no transcript of the underlying arbitration in this matter, rendering any factual arguments by MEMC that were not explicitly contained in its Arbitration Briefs and not otherwise part of the record non-starters before this Court. If this Court were to consider such factual assertions, it would essentially be taking on the role of accepting new evidence and new arguments, a role well beyond the scope of review of an arbitration award, as set forth herein.

As is evident on the face of the Award itself and by the Arbitration Briefs filed by the parties, Arbitrator Gianoulakis was well within his arbitral authority in this matter and the subject matter was finally and fully resolved by his Award. Moreover, not only did Arbitrator Gianoulakis not "ignore" any applicable law that was clearly identified in the Arbitration proceedings, his Award was well-reasoned and in-line with very clear legal precedent. The Award also very clearly and unequivocally drew its essence from the agreement under which Pirooz was sued by MEMC. For these reasons, and as more fully set forth herein, MEMC has fallen far short of meeting its burden of proof and its frivolous motion should be denied. *Stark*, 381 F.3d at 802 (burden of proof on party seeking vacatur) (internal citations omitted).

## IV.  ARGUMENT

### A.  MEMC Has Entirely Waived its Ability to Prevail on its Motion to Vacate the Arbitration Award

MEMC has waived any argument that Arbitrator Gianoulakis' award of attorneys' fees was in any way improper or that his holding that a forfeiture would be inequitable is outside of his authority, irrational or contrary to the law. *See*, *e.g.*, *Zingg*, 388 F.3d at 843; *White*, 328 F.3d

14

at 372; *Hope Elec. Corp.*, 380 F.3d at 1101; and other cases cited *supra*.  MEMC failed to raise

these arguments even though it was well aware of the issues well before, during and after the

arbitration hearing, as both issues were argued and raised by Pirooz in his Arbitration briefs and

in oral argument.  Ex. 2, pp. 2, 5-6; Ex. 3, pp. 11-15; Ex. 4, pp. 34-37.  Indeed, even in his pre-

arbitration brief, Pirooz argued that the forfeiture provisions "equitably should not be enforced."

Ex. 3, p. 15 (and p. 14, n.8).  The practical effect of MEMC's failure is that it has waived its

ability to prevail on its Motion to Vacate because the Arbitrator found, as an independent

holding, that the forfeiture provision of the General Release should not be enforced because it

would be inequitable to do so.  *See generally* Ex. 1.  In other words, even had the Arbitrator

agreed that Soitec and MEMC were technically "competitors" under the Agreement, he

nevertheless believed it would be inequitable to award a forfeiture.  *Id.*  Even MEMC contends

that the sole basis of the Arbitrator's Award was his finding that it would be inequitable to award

a forfeiture.  MEMC Memo., pp. 14-23.[8]  That contention dooms MEMC's Motion to Vacate,

because that would mean that there is no other rationale of the Arbitrator to review, other than

the issue of whether the disfavored nature of forfeitures under the facts of the case was a proper

basis to deny enforcement.  Notably, MEMC does not even argue in its Memorandum in Support

that it *would have been* equitable to award a forfeiture.  Instead, MEMC argues that using

equitable principles are *per se* improper and, further, that MEMC and Soitec are competitors as

defined by the General Release.  MEMC Memo., pp. 23-26.

On the other hand, during the Arbitration proceedings, regarding the issue of the

Arbitrator's use of equitable principles, MEMC actually argued that it *would* be equitable and

---

[8]   In reality, it is clear that Arbitrator Gianoulakis refused to order a forfeiture against Pirooz for two separate reasons, each of which, according to the Award, provides an independent basis for not awarding the forfeiture.  *See infra*, pp. 5-8.

reasonable, and not unduly punitive, to award a forfeiture in this case and never argued, and thus never cited to any authority, that the application of equitable principles in deciding the matter was contrary to any substantive legal principle.  Ex. 7, pp. 15-20.  If anything, during the Arbitration and in its Post-Arbitration Brief, the focus of MEMC's argument in support of forfeiture was the alleged material competition between MEMC and Soitec and the alleged patent reasonableness of awarding the forfeiture.  Ex. 7, pp. 15-20.[9]  Having failed in that attempt, MEMC bases its Motion to Vacate on a new theory on the merits not raised in the Arbitration:  that applying equitable principles to deny enforcement of a forfeiture provision in a non-compete agreement is contrary to the law.  MEMC Memo. in Supp., pp. 16-22 (compare to MEMC's pre- and post-arbitration briefs, Exs. 6, 7).  This Court cannot consider that argument now.  *See*, *e.g.*, *Zingg*, 388 F.3d at 843; *Hope Elec. Corp.*, 380 F.3d at 1101; *White*, 328 F.3d at 372; and other cases, cited *supra*.  As stated, because the issue of the inequity of awarding a forfeiture was an independent rationale in the Award for denying enforcement against Pirooz, MEMC's waiver leads to the necessary result that the Arbitrator's decision not to award a forfeiture be confirmed by this Court.

The same is true with respect to the issue of Arbitrator Gianoulakis' award of attorneys' fees.  Pirooz asked for fees in each of his written submissions to the Arbitrator and, as MEMC is well aware, further argued for attorneys' fees at the hearing in this matter.  Ex. 2, pp. 5-6; Ex. 3, p. 15; Ex. 4, pp. 40-46).  Never once did MEMC argue, in writing or orally, that fees were not recoverable by Pirooz should he prevail on the merits in the Arbitration.  (*See generally* MEMC

---

[9]   As MEMC will recall, in response to Pirooz's defense, at the close of the Arbitration hearing, Arbitrator Gianoulakis specifically instructed the parties to address the issue of whether it would be equitable to award the forfeiture.  MEMC did address that issue, arguing that it would be equitable to award the forfeiture, but never argued, directly or indirectly, that the consideration or application of equitable principles was somehow improper or contrary to the law.

Pre-Arb. Br., Ex. 6 and Post-Arb. Br., Ex. 7).  While MEMC aggressively insisted on its *own* right to attorneys' fees in the arbitration, it neglected to ever even acknowledge Pirooz's request for fees, much less make any argument against Pirooz's request.  Ex. 6, pp. 9-10; Ex. 7, pp. 18-19.  Indeed, at the close of the arbitration hearing, Arbitrator Gianoulakis asked *both* MEMC *and* Pirooz to separately submit affidavits and other documents in support of the amount of fees each party was seeking in the proceedings.  The parties did, in fact, submit such documentation.  Exs. 11, 12, 13.  MEMC must now live with its strategic decision at the Arbitration not to acknowledge the possibility that Pirooz might prevail.[10]

As stated, in the face of MEMC's failure to make any argument in the Arbitration concerning the application of equitable principles to deny the award of a forfeiture (as argued by Pirooz) or any argument against Pirooz's request for attorneys' fees, the district court cannot consider any alleged error in the Arbitrator's decision based on such arguments, "for [they are] **deemed waived**," *Zingg*, 388 F.3d at 843, as the practical effect of MEMC's failure is to reduce the already narrow scope of the Court's review of such matters "**to nil**."  *Hope Elec. Corp.*, 380 F.3d at 1101.

In addition, it bears noting that the arbitration clause in this matter provides that if either party presents a controversy that the other believes is outside of the scope of what is arbitrable, the other party's recourse is to address the arbitrability directly with the arbitrator himself.  Ex. 8, General Release, pp. 5-6, § 13,.  Thus, to the extent MEMC believed an issue was not arbitrable, it had to at the very least address that concern directly with the Arbitrator.  *Id.*  Never did MEMC argue that Pirooz was seeking relief that would require Arbitrator Gianoulakis to issue an award on matters outside of his authority.  *See generally* Exs. 6, 7.  MEMC should not and cannot be

---

[10]  MEMC makes no argument that the amount of fees and costs awarded to Pirooz was unreasonable.

permitted to make new arguments before this Court that were not presented to the Arbitrator, because to do so would completely undermine the arbitration process, which is designed as an *alternative* to litigation, not as a first bite at the apple for litigants.[11]

**B.**   **Even Assuming, *Arguendo*, That MEMC Did Not Waive its Arguments, Arbitrator Gianoulakis Was Well-Within His Authority in Holding That Pirooz Did Not Breach the General Release and Waiver Agreement**

1.   Arbitrator Gianoulakis' Range of Authority Was Extremely Broad

The Court "must" uphold the Arbitration Award even if the Court is "convinced the arbitrator committed a **serious error**, so 'long as the arbitrator is even **arguably** construing or applying the contract and acting within the scope of his authority." *Stark*, 381 F.3d at 798 (emphasis added); *see also supra*, pp. 9-12.  MEMC conveniently failed to cite to this clear Eighth Circuit standard.  MEMC Memo., pp. 12-13.  MEMC also relies on highly distinguishable authority outside of the Eighth Circuit to support its position (while, again, failing to even mention or analyze material aspects of the actual Eighth Circuit standards articulated in *Electrolux Home Products*, 416 F.3d at 853 and *Stark*, 381 F.3d at 798-99.  MEMC Memo., pp. 18-20.  More important than all of the foregoing, however, is that MEMC has ignored the most relevant terms of the General Release Agreement and arbitration rules incorporated into the Agreement, which provided tremendously broad authority to the Arbitrator to grant *any* relief he believed was "just and equitable."  See *infra*.  MEMC's argument to the contrary is simply frivolous and flies in the face of contrary facts *and* law.

Other than with respect to MEMC's right under the General Release to obtain injunctive relief in a court should it believe Pirooz violated his restrictive covenants, the arbitration clause provides, in pertinent part:

---

[11]   As stated, MEMC's recitation of facts underlying the arbitrated dispute in its Memorandum in Support of its Motion to Vacate is also largely inappropriate.  *See supra*, pp. 12-13.

> . . . Dr. Pirooz and MEMC agree that any dispute, controversy or claim (between Dr. Pirooz and MEMC) **arising out of, based upon or relating to** Dr. Pirooz's employment, the termination of his employment, this Agreement or its breach, whether denominated as torts or contract claims or as statutory or regulatory claims . . . . whether arising before, during or after termination of Dr. Pirooz's employment, **and also including any dispute about whether any particular controversy is arbitrable under the terms of this paragraph**, shall be resolved by binding arbitration before one (1) arbitrator. . . The Arbitrator shall have the authority to award the costs of the Arbitration (including attorney's fees) in a manner consistent with the controlling substantive claim at issue.  Similarly, the Arbitrator shall have the authority to award damages (**or other relief**) consistent with the substantive claim being asserted.

Ex. 8, § 13 (emphasis added).

Moreover, and significantly, the arbitration clause chooses the American Arbitration Association's National Rules for the Resolution of Employment Disputes (hereinafter the "AAA Rules") as applicable to any arbitration between the parties. Ex. 8, § 13; Ex. 9.  The AAA Rules explicitly provide that they are part of the parties' agreement providing for arbitration:

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] or under its National Rules for the Resolution of Employment Disputes. . .

(Ex. 9, p. 5, AAA Rule 1).[12]  Therefore, the following "rule" was actually a term of the parties' Agreement:

> The arbitrator may grant **any remedy or relief that the arbitrator deems just and equitable**, including any remedy or relief that would have been available to the parties had the matter been heard in court . . .

(*Id.* at p. 11, AAA Rule 34(d)) (emphasis added).  This provision on its face gives the Arbitrator extremely broad authority in fashioning relief in the case.  *See*, *e.g.*, *Brown v. Coleman Co.,* 220 F.3d 1180, 1183-84 (10th Cir. 2000) (interpreting AAA Rule 34(d) and holding that arbitrator in that case had broad authority to issue relief based on equitable principles and further stating that

---

[12]  The AAA Rules also provide that, to the extent there is a material inconsistency between the parties' agreement and the rules, the AAA Rules apply.  (Ex. 9, p. 5, AAA Rule 1).

"[i]t is beyond question that an arbitrator may have broad equity powers if the rules under which he is operating provide for equitable relief") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991));[13] *see also Kaminow v. West Mill Clothes, Inc.*, 2005 WL 2495777, *1 (N.Y.A.D. 1st Dept., October 11, 2005) (under AAA Rule 34(d), arbitrators had authority to consider broad range of defenses raised by the respondent in arbitration).[14]

> a.   Arbitrator Gianoulakis Was Well Within his Authority in Holding that Pirooz Did Not Breach the General Release.

First, contrary to the presentation given by MEMC to this Court, Arbitrator Gianoulakis did not "only" base his decision on the principle that forfeitures are disfavored under the law or on the fact that MEMC's conduct toward Pirooz was atrocious and that its other conduct made a forfeiture inequitable.  It is clear, however, that application of such principles and facts alone in this matter would certainly have been within the Arbitrator's authority pursuant to AAA Rule 34(d) (quoted above).  *See generally* Ex. 4.  Rather, Arbitrator Gianoulakis succinctly and clearly analyzed the General Release and found that MEMC "failed to carry the burden of proving" that Pirooz breached the non-compete provisions contained therein.  Ex. 1, pp. 3-7.  Indeed, after noting that it was MEMC's "burden of proving a breach of the Agreement" (*Id.* at p. 3), Arbitrator Gianoulakis proceeded to analyze and interpret the language of the restrictive covenant at issue in this case, a task certainly within his authority.  *Id.* at p. 4.  As noted by the Arbitrator, the restrictive covenant at issue provided that, for two years after his employment with MEMC ended, Pirooz could not "engage in or contribute [his] knowledge to any work or activity that involves a product, process, apparatus, service or development which is then

---

[13]   Although a Tenth Circuit case, *Brown v. Coleman Co.* was decided by Senior Eighth Circuit Judge, Frank Magill, who was sitting by designation.  *Brown*, 220 F.3d at 1180.

[14]   The *Kaminow* decision is filed herewith as Exhibit 15.

competitive with or similar to any product, process, apparatus, service or development on which [Pirooz] worked or with respect to which [Pirooz] had access to confidential information while at MEMC Electronic Materials, Inc. . ." *Id.* (quoting restrictive covenant).  After receiving into evidence dozens of exhibits, the lengthy pre- and post-arbitration briefs of the parties, and almost 3 days of testimony and oral arguments,[15] Arbitrator Gianoulakis held that MEMC had failed to prove that Pirooz breached the Agreement because it failed to show that, "while [Pirooz] worked for MEMC it had a product, process, apparatus, service or development 'then competitive with or similar to a product' sold by Soitec." *Id.* at p. 5.  In other words, separate and apart from his forfeiture analysis, Arbitrator Gianoulakis clearly held that the Soitec was not a competitor under the General Release Agreement, which meant that Pirooz's employment with Soitec was not a breach of the Agreement.  *Id.* at pp. 4-7.  Certainly, such an analysis and conclusion was well within Mr. Gianoulakis' authority in deciding this matter and, moreover, such a holding necessarily took its essence from the parties' Agreement.

MEMC wants this Court to focus on purported facts that it says indicate that the definition of a competitor under the Agreement was met by MEMC.  MEMC Memo., pp. 7-9, 23-24.  However, the Arbitrator clearly quoted the relevant language and applied his findings of facts to that language in issuing his ruling.  Ex. 1, pp. 4-6.  MEMC may disagree with those findings of fact and with the application of those facts in this case, but such findings and application are not reviewable by this Court.  *See*, *e.g.*, *Electrolux Home Products*, 416 F.3d at 853 ("[t]hat a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision") (internal citation); *Stark*, 381 F.3d at 798 ("courts are not authorized to

---

[15]   As stated, the parties in this matter agreed not to have the proceedings transcribed.  In that regard, it bears noting that MEMC's current counsel did not represent MEMC during the Arbitration proceedings and was therefore not present at the hearings.

reconsider the merits of an arbitral award '**even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract**'") (internal quotes and citation omitted) (emphasis added).  Again, a District Court does not sit as a court of appeals in reviewing findings of fact (or law) and cannot disturb the Award even if it thinks the Arbitrator got the facts wrong.  *Electrolux Home Products*, 416 F.3d 853.  MEMC's argument is therefore unavailing and Arbitrator Gianoulakis was well within his authority in issuing the Award.

> b.   Arbitrator Gianoulakis Was Well Within His Authority in Holding That it Would Be Inequitable to Award a Forfeiture of Severance Payments and Benefits to MEMC.

Even had MEMC preserved this issue for review, Mr. Gianoulakis was also well within his authority to consider whether it would be equitable to enforce a forfeiture against Pirooz (even assuming, *arguendo*, that MEMC and Soitec were competitors under the terms of the Agreement).  Indeed, as stated, the grant of authority to the Arbitrator in this matter was extremely broad, allowing Arbitrator Gianoulakis to make an award of damages "or other relief" and to grant any relief he deemed was "just and equitable."  Ex. 8, § 13, pp. 5-6; Ex. 9, p. 11, AAA Rule 34(d).  On its face, such a broad standard essentially renders MEMC's argument that the Arbitrator acted outside of his authority frivolous[16] and gave Mr. Gianoulakis the authority to essentially fashion any relief that was not in manifest disregard of the law.  Thus, contrary to MEMC's assertions to this Court, Arbitrator Gianoulakis was not restricted to the four corners of the General Release and Waiver Agreement in deciding whether to award a forfeiture.  *See*, *e.g*., *Brown*, 220 F.3d at 1183-84 (holding that arbitrators did not exceed their authority when they

---

[16]  Par for the course of conduct of MEMC from the time it began pursuing punitive measures against Pirooz, MEMC's aggression leads it into an untenable position.  MEMC either tries to mislead the Court or simply failed to read the very Agreement it drafted and the AAA Rules that were incorporated as part of that Agreement.  Either way, MEMC's argument that Arbitrator Gianoulakis exceeded his authority is *completely* without merit.

applied equitable principles outside of four corners of document in arriving at holding).[17]  Thus,

even assuming that Mr. Gianoulakis' forfeiture analysis was somehow faulty (an argument not

even made by MEMC), the analysis was still well within his authority, leaving MEMC with the

burden of proving that a non-statutory standard of review supports vacating the Award.

---

[17]  Even the cases cited by MEMC support the Arbitrator's ruling.  For example, MEMC cites *Grebing v. First Nat'l Bank of Cape Girardeau*, 613 S.W.2d 872 (Mo. App. 1981), in support of its argument that equitable defenses are unavailing against a forfeiture provision in a purported non-compete agreement.  MEMC Memo. in Supp., p. 22.  In fact, in *Grebing*, the court specifically gave credence to the defendant's argument that the plaintiff waived its right to a forfeiture under the parties' agreement, although ultimately rejecting the defense under the facts of the case.  Far from rejecting the defense as inappropriate in the context of a forfeiture provision, the Court fully analyzed whether a waiver had, in fact, occurred. *Grebing*, 613 S.W.2d at 876.  Other cases cited by MEMC explicitly affirm the notion that an arbitrator is not limited to the four corners of the contract at issue.  *See, e.g.*, *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001) (unless the contract places specific limits on an arbitrator indicating otherwise, "an arbitrator is not confined to the express terms of the contract . . .") (internal quotations and citations omitted) (cited in MEMC Memo., p. 14); *United Inter-Mountain Telephone Co. v. Communications Workers of Amer., Local 3871*, 662 F.Supp. 82, 85 (E.D.Tenn. 1987) (arbitrator was within his authority in applying the covenant of good faith and fair dealing and "implying a reasonableness standard on the conduct of the company") (cited in MEMC Memo, pp. 18-20).  MEMC also cites to *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287 (3rd Cir. 2001) (cited in MEMC Memo., pp. 19-20), which articulated a different standard of review than provided by the Eighth Circuit in determining whether an arbitrator was within his authority.  *Id.* at 301.  Moreover, the arbitration clause in that case was extremely narrow, contrasted with the broad scope of arbitral authority granted in the present matter.  *See supra*, pp. 18-23.  Indeed, the arbitration clause in *Roadway Package* adopted the Commercial Arbitration Rules of the AAA as applicable to any dispute.  *Roadway Package Sys.*, 257 F.3d at 289.  As discussed in *Brown v. The Coleman Co.* (cited *supra*, p. 19), the Commercial Arbitration Rules of the AAA provide a much narrower scope of arbitral authority than the Employment Dispute Rules of the AAA adopted in MEMC's and Pirooz's agreement.  *See Brown*, 220 F.3d at 1183-84.  The arbitration clause in *Roadway Package* also specifically limited the arbitrator's authority, providing that the arbitrator "shall have the authority **only** to conclude whether the termination of [the agreement] was within the terms of the Agreement . . ." *Roadway Package Sys.*, 257 F.3d at 289 (emphasis added).  No such language is contained in Pirooz's agreement with MEMC.

      c.      Arbitrator Gianoulakis Was Well Within His Authority in Awarding Costs and Attorneys' Fees to Pirooz.

As with the forfeiture issue, even had MEMC preserved this issue for review, Arbitrator Gianoulakis was well within his authority in awarding attorneys' fees.  The General Release explicitly permits the award of fees "in a manner consistent with the substantive claim at issue," and specifically permits fees incurred "*defending*" a claim under the Agreement.  Ex. 1, 9, (quoting Agreement); Ex. 8, § 17.  Moreover, the AAA Rules, which are part and parcel of the Agreement, provide that "[t]he arbitrator shall have the authority to provide reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law."  Ex. 9, p. 11, AAA Rule, 34(e).  The AAA Rules also provide that Arbitrator Gianoulakis can issue an remedy that he believes is "just and equitable."  Ex. 9, p. 11, AAA Rule 34(d).

In this case, Arbitrator Gianoulakis applied and interpreted the attorneys' fees provision in the General Release in awarding fees.  Ex. 1, pp. 9-11.  MEMC may disagree with Arbitrator Gianoulaksis' interpretation of that provision, but that disagreement does not render his Award outside of his authority.  Indeed, even MEMC agrees that, under Missouri law, attorneys' fees are available if provided by contract "or when a court of equity finds them necessary in order to balance benefits."  MEMC Memo., p. 29, and cases cited therein.  *See also Harris v. DeSisto*, 932 S.W.2d 435, 448 (Mo. App. 1996).  Certainly, even without an attorneys' fees provision permitting the award of fees, Arbitrator Gianoulakis would have in any event been permitted to award fees in order to balance the equities.  Once again, assuming this issue was preserved for review by MEMC (which it clearly was not), MEMC is left with the burden of proving that some non-statutory standard of review mandates vacating the award – namely, that Arbitrator Gianoulakis "manifestly disregarded the law," as that standard is defined in the Eighth Circuit (s*ee* p. 28 below).

Far from abandoning the scope of his authority, Arbitrator Gianoulakis was well within it in deciding any issue and awarding any relief related to the General Release and Pirooz's employment or termination from employment, in accordance with whatever the Arbitrator deemed was "just and equitable."  Ex. 8, § 13; Ex. 9, p. 11, AAA Rule 34(d).  Based on the foregoing, MEMC's apparent position that Arbitrator Gianoulakis failed to remain within the scope of his authority in issuing his Award is unavailing.  MEMC has fallen far short of meeting its burden of proof.

**C.      Arbitrator Gianoulakis Did Not "Manifestly Disregard the Law"**

As stated, "an arbitration decision only manifests disregard for the law where the arbitrators clearly identify the applicable governing law and then proceed to ignore it.  *Hoffman*, 236 F.3d at 461-62 (citing *Stroh Container Co. v. Delphi Industries*, 783 F.2d 743, 749-50 (8th Cir. 1986)) (emphasis added); *see also Stark*, 381 F.3d at 802.  As further stated by the Eighth Circuit Court of Appeals, "[m]anifest disregard of the law is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law."  *Id*. (internal citation and quotations omitted).

    1.      <u>Arbitrator Gianoulakis Did Not Manifestly Disregard the Law in Finding No Breach of the Severance Agreement or in Finding that it Would Be Inequitable to Award a Forfeiture</u>.

In its continued campaign to penalize Pirooz, MEMC manages to do nothing more than confuse the standard of review in this matter and engage in its own "ignoring" of applicable legal principles.  As stated, the only way a reviewing court can conclude that an arbitrator manifestly disregarded the law is to find that (a) the applicable law was clearly identified in the arbitration by the parties or the Arbitrator and (b) the arbitrator proceeded to **ignore** the law.  *Stark,* 381 F.3d at 802; *Hoffman*, 236 F.3d at 461-62.  Thus, a reviewing court is not sitting to hear arguments of legal or factual error and, in fact, "[a district court's] disagreement with an

arbitrator's interpretation of the law or determination of the facts is an insufficient basis for setting aside his award." *Stark*, 381 F.3d at 802 (internal citation and quotations omitted). Indeed, even if the Court is **convinced** that the arbitrator got the facts and law wrong, or interpreted the contract incorrectly, it must still confirm the Award (and deny any motion to vacate) unless there is a "manifest disregard for the law," as defined above. *See Electrolux Home Products*, 416 F.3d at 853 ("[t]hat a court is <u>**convinced**</u> [the arbitrator] committed serious error does not suffice to overturn his decision") (internal citation omitted) (emphasis added). While MEMC may believe that this standard sounds harsh, "it is exactly what [MEMC] agreed upon by electing arbitration over judicial resolution," and it is clearly and unequivocally the law in this Circuit. *Id.* (internal citation omitted).

MEMC has failed to point to any legal principle that was both identified in the Arbitration and ignored by Arbitrator Gianoulakis. With respect to the finding that MEMC failed to prove that there was a breach of the Agreement, MEMC has not alleged that any actual "legal principle" was identified, and instead argues that the Arbitrator got the facts wrong, or interpreted the facts or terms of the contract incorrectly. *See generally* MEMC Memo. Therefore, even MEMC must admit that Arbitrator Gianoulakis cannot be said to have manifestly disregarded the law in his finding. *See*, *e.g.*, *Stark*, 381 F.3d at 802.

With regard to Arbitrator Gianoulakis' additional holding that it would be inequitable to award a forfeiture under the circumstances (assuming, *arguendo*, that such an argument was not waived), MEMC has once again failed to direct the Court to any legal principle that was *identified in the Arbitration* but ignored by Mr. Gianoulakis. MEMC cites to one Missouri case and several non-Missouri cases for the purported proposition that a forfeiture provision in a non-compete agreement "is valid and enforceable" and "does not require a determination of whether

26

the forfeiture of benefits is fair, reasonable and enforceable."  MEMC Memo., pp. 21-22.

However, that purported principle was never identified by any party or by the Arbitrator in the

underlying Arbitration.  Under the clear mandates of Eighth Circuit law, Mr. Gianoulakis cannot

be said to have "manifestly disregarded" a legal principle that was not identified.  *Stark,* 381

F.3d at 802; *Hoffman*, 236 F.3d at 461-62.  Moreover, the legal principles that were identified

(*e.g.* that forfeitures are disfavored in the law and "are to be prevented when it is inequitable to

allow a forfeiture to be enforced") were not ignored, but were applied.  Ex. 1, pp. 3, 7-8; Ex. 3,

pp. 3-4, 13-15; Ex. 4, pp. 34-37.  MEMC may disagree with the Arbitrator's application of these

legal principles, and may ask the Court to also disagree, but that is not the standard for vacating

the Arbitration Award.  *Stark*, 381 F.3d at 802.

  Finally, although such a conclusion is not required to uphold the award, Arbitrator

Gianoulakis' interpretation and application of the law was correct, particularly in light of the

broad powers granted to the Arbitrator.  Indeed, to the extent MEMC believes Arbitrator

Gianoulakis was required to follow legal principles not presented or identified in the Arbitration,

those principles were nevertheless contradicted by the very terms of the AAA Rules, which are

considered actual terms of the parties' Agreement.  Ex. 9, pp. 5, 11, AAA Rules 1, 34(d).  AAA

Rule 34(d) specifically provides that the Arbitrator could award any relief he deemed was just

and equitable.  *Id.* at p. 11.  Thus, the parties effectively contracted out of any *alleged*

requirement under Missouri law that equitable principles not be applied in determining the

appropriate relief with respect to MEMC's claim for a forfeiture.  *See, e.g.*, *Stark*, 381 F.3d at

798, 800 (stating, the FAA "established a liberal federal policy of favoring arbitration

agreements" and "the FAA allows parties to incorporate terms into arbitration agreements that

are contrary to state law"); *see also* Ex., 9, p. 5, AAA Rule 1 (stating that to the extent there is

any material inconsistency between the AAA Rules and the parties' agreement, the AAA Rules apply).

    2.    <u>Arbitrator Gianoulakis Did Not "Manifestly Disregard the Law" When He Awarded Attorneys' Fees to Pirooz</u>

Other than arguing that Arbitrator Gianoulakis exceeded his authority under the parties' Agreement, the sole basis for MEMC's argument that the award of attorneys' fees was improper was that it was in manifest disregard of the law.  MEMC Memo., pp. 28-30.  Once again, MEMC has failed to point to any legal principle that was both *clearly identified* in the Arbitration but *ignored* by the Arbitrator.  Indeed, this fact simply underscores MEMC's failure to ever raise the issue of Pirooz's right to attorneys' fees during the arbitration process.  Instead, MEMC now tries to repackage the Arbitrator's recitation of facts (*i.e.* contract language) as a statement of the law.  *Id.*  The Court should reject MEMC's disingenuous attempt to argue the "manifest disregard of the law" standard.

MEMC is attempting to avoid the fact that the Arbitrator had broad authority to interpret the parties' Agreement, which, again, on its face provides that a prevailing party *defending* an action under the Agreement may collect its attorneys' fees.  Ex. 8, §13.  Arbitrator Gianoulakis identified that language, even going so far as to emphasize the key terms in the attorneys' fees provision.  Ex. 1, p. 9.  Even if the Court is "convinced" that the arbitrator committed a serious error, so long as the Arbitrator is "even **arguably** applying the [parties'] contract," the award "must be confirmed."  *Stark*, 381 F.3d at 798; *see also Electrolux Home Products*, 416 F.3d at 853.  A district court "[does] not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  *Id.* at 853 (quoting *Bureau of Engraving*, 284 F.3d at 824-25) (internal quotations omitted).  This is exactly what MEMC agreed to by electing arbitration to resolve disputes with Pirooz.  *Id.*

Again, however, this entire issue is moot, because MEMC waived its right to seek any review of the Arbitrator's award of attorneys' fees.

## D.     Arbitrator Gianoulakis' Award Was Not "Completely Irrational"

It is not clear from MEMC's brief whether it even argues "irrationality" as a basis for vacating the Award, at least insofar as the standard is defined by the case law.  As stated, an arbitration decision "may **only** be said to be irrational where it fails to draw its essence from the agreement . . ." *Hoffman*, 236 F.3d at 461-62 (citing *Stroh Container Co. v. Delphi Industries*, 783 F.2d 743, 749-50 (8th Cir. 1986)) (emphasis added).  MEMC never once mentions this definition of the "completely irrational" standard and instead appears to collapse its argument under the "completely irrational" standard into its argument regarding the scope of authority of the Arbitrator, addressed above.  MEMC's failure to conduct such an analysis is telling.

The General Release in this matter provided that the Arbitrator could award damages "or other relief" to either party and, further, adopted the AAA Rules, which provide that the Arbitrator could award any relief he deemed was "just and equitable."  Ex. 8, § 13; Ex. 9, p. 11, Rule 34(d).  Given Arbitrator Gianoulakis' tremendously broad authority under the terms of the parties' Agreement and his thorough analysis of the parties' Agreement and the issues in the case (Ex. 1), it simply defies logic to conclude that his Award failed to draw its essence from the Agreement.[18]  That, of course, is why MEMC did not even mention the definition of "irrationality" in its initial brief.

---

[18]   As stated, to the extent any irrationality argument was made by MEMC, such an argument was not made with respect to the award of attorneys' fees, but only with respect to the refusal to award a forfeiture.  *See generally* MEMC Memo.

**E.      Arbitrator Gianoulakis Entered a Mutual, Final and Definite Award and MEMC's Argument to the Contrary is Patently Frivolous**

Arbitrator Gianoulakis clearly, finally and definitely decided all claims made by MEMC in the Arbitration.  After providing a cogent, thorough analysis of the issues, Arbitrator Gianoulakis could not have been more clear that all claims were fully decided and that a final, definite award was being issued:

> Based on all the evidence, the undersigned finds all of the issues against Claimant and in favor of Respondent and denies all of Claimant's claims in this Arbitration and dismisses those claims with prejudice.

Ex. 1, p. 9.  Arbitrator Gianoulakis went on to remove any further doubt by holding:

> This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are, hereby, denied.

*Id.* at p. 11.  Further, Arbitrator Gianoulakis was clear and definite with respect to the attorneys' fees and costs being assessed against MEMC and in favor of Pirooz.  *Id.* at pp. 10-11.

Despite the foregoing, MEMC argues that Arbitrator Gianoulakis failed to issue a mutual, final, and definite Award under the FAA.  MEMC Memo., pp. 26-28.  As stated by MEMC, the FAA does provide that a court may vacate an arbitration award where the arbitrator "so imperfectly executed [his powers] that a mutual, final and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4) (cited in MEMC Memo., p. 26).  Although MEMC cites to a Seventh Circuit Court of Appeals decision delineating the meaning of this provision of the FAA, MEMC nevertheless proceeds to ignore the clear standard articulated in that case and even makes-up its own strained interpretation of the provision.  MEMC Memo., pp. 26-28.

Indeed, MEMC cites to *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.*, 266 F.3d 645 (7th Cir. 2001) as the lone case supporting its argument.  Not only does *IDS Life Insurance* not support MEMC's argument under Section 10(a)(4), it actually renders MEMC's argument

frivolous and, it would seem, as being made in bad faith. *IDS Life Insurance* sets forth the

meaning of the relevant provision of Section 10(a)(4) very succinctly:

> We take "mutual" and "final" to mean that the arbitrators must have
> resolved the entire dispute . . . that had been submitted to them . . . and
> "definite" to mean . . . that the award is sufficiently clear and specific to be
> enforced should it be confirmed by the district court and thus made
> judicially enforceable.

*IDS Life Ins.*, 266 F.3d at 650 (internal citations omitted).  The Court of Appeals even further

clarified the meaning of the provision, as follows:

> The requirements of finality and definiteness **are ones more of __form__ than
> of substance**.  They must not be confused with whether the arbitrators'
> award was correct or even reasonable, since neither error nor clear error
> nor even gross error is a ground for vacating an award.

*Id.* (internal citations omitted) (emphasis added).

Despite these very clear directives provided in the lone authority cited by MEMC,

MEMC proceeds to ignore those directives and do exactly what *IDS Life Insurance* counseled

against – that is, MEMC confuses its argument on whether the Arbitrator's award was

substantively correct with whether it was final and definite in form.  MEMC Memo., pp. 26-28.

MEMC's request for vacatur under this provision of Section 10(a)(4) is patently frivolous and

should be denied.

**F.     The Court Should Confirm Arbitrator Gianoulakis' Award and Further Award
        Prejudgment Interest and Attorneys' Fees to Pirooz**

Under Section 9 of the FAA, "the court must grant [a confirmation] order unless the

award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]."

*North Central Constr. v. Siouxland Energy and Livestock Cooperative*, 2004 WL 2413394, *10

(N.D.IA October 26, 2004) (quoting *Domino Group, Inc., v. Charlie Parker Mem'l Found.*, 985

F.2d 417, 419 (8th Cir. 1993)).[19]  Thus, should the Court deny MEMC's Motion to Vacate, it should enter judgment for Pirooz on his Complaint to Confirm the Arbitration Award.

In addition to be entitled to judgment on the full Award amount of $113,482.19, Pirooz is entitled to prejudgment interest on that amount, beginning from the date of the entry of the Award (as requested in Pirooz's Complaint for Confirmation).  Indeed, "[p]rejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable."  *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 752 (8th Cir. 1986) (awarding prejudgment interest on arbitration award) (internal citations omitted). This is particularly the case where, here, "the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due."  *Id.*  In short, the award of prejudgment interest in this case would merely provide Pirooz the "true costs of money damages incurred."  *Id.*

In addition to prejudgment interest, Pirooz is also entitled to his attorneys' fees expended pursuing confirmation of the Arbitration Award and defending against MEMC's Motion to Vacate.  As held by the Arbitrator, the General Release and Waiver Agreement entered into by Pirooz and MEMC specifically provides that attorneys' fees are available to the prevailing party in litigation, including fees expended *defending* such litigation.  (Ex. 1, p. 9).  Under that provision, the Arbitrator already found that Pirooz was entitled to fees defending himself against MEMC.  The additional fees sought by Pirooz are but a continuation of the fees to which the Arbitrator held he was entitled.  To deny Pirooz the costs and fees he incurred obtaining confirmation and defeating MEMC's attempt to vacate the Award would not only be patently

---

[19]  *North Central Construction v. Siouxland Energy and Livestock Cooperative*, is filed herewith as Ex. 16.

inconsistent with the ruling of Arbitrator Gianoulakis (and thus contrary to the extraordinary deference accorded him), but would reward MEMC's draconian attempt to continue to exact punishment of Pirooz through its frivolous Motion to Vacate.  *See North Central Constr.*, 2004 WL 2413394, at *11 (providing that post-arbitration fees are recoverable if authority to award the fees arises from the parties' contract).  The Court should award Pirooz his attorneys' fees and costs, as requested in his Complaint for Confirmation, along with prejudgment interest from the date of the Award.

<u>**CONCLUSION**</u>

MEMC, a billion dollar company, has pursued litigation against an individual former employee, Pirooz, for the forfeiture of over $300,000 in severance and other benefits, even though Pirooz joined a non-competitor and even though Pirooz did not begin his new employment until over 15 months had elapsed since leaving MEMC.  MEMC's aggressive and punitive attack against Pirooz cannot be allowed to succeed.

Indeed, MEMC waived its ability to obtain vacation of Arbitrator Gianoulakis' Award, and its Motion to Vacate should be denied for that reason alone.  Moreover, Arbitrator Gianoulakis was well within his authority in issuing his well-reasoned, final and definite Arbitration Award.  For these reasons, as more fully articulated in this Memorandum in Opposition, MEMC's Motion to Vacate should be denied and judgment should be entered in Pirooz's favor on his Complaint for Confirmation of the Award, including judgment for prejudgment interest from the date of the Award and for attorneys' fees expended by Pirooz defeating MEMC's Motion to Vacate and obtaining confirmation of the Award.

Respectfully submitted,


ARMSTRONG TEASDALE LLP


By: /s/  E.W. Gentry Sayad_____
        E.W. Gentry Sayad, #42558
        Michael B. Kass, #94212
        One Metropolitan Square, Suite 2600
        St. Louis, Missouri 63102-2740
        (314) 621-5070
        (314) 621-5065 (facsimile)

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of November, 2005, a true copy of the foregoing was

served via electronic notification, through the Court's ECF system, upon:

Kevin A. Sullivan
Christopher K. Geldmacher
3415 Hampton Ave.
St. Louis, MO 63139
ksullivan@sselaw.net
cgeldmacher@sselaw.net

and

Robert Schultz, Esq.
Schultz & Little, LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005


/s/  E.W. Gentry Sayad