UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SAEED PIROOZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.:     4:05MC00521 CDP |
| | ) | |
| MEMC ELECTRONIC MATERIALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MEMC ELECTRONIC MATERIALS, INC'S
REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO VACATE ARBITRATION AWARD**

COMES NOW Defendant MEMC Electronic Materials, Inc. (hereinafter "MEMC"), by

and through counsel, Sauter Sullivan, LLC, and for its Reply to Plaintiff's Memorandum in

Opposition to Defendant's Motion to Vacate Arbitration Award, respectfully states as follows:

I. <u>INTRODUCTION</u>

MEMC believes that the Arbitration Award which is the subject of this action should be

vacated pursuant to 9 U.S.C. §10(a)(4) because the Arbitrator exceeded the powers granted to

him under the agreement between the parties that formed the basis for the arbitration by: (i)

applying equitable principles to decide this contract action and, thus, disregarding applicable

Missouri law, (ii) failing to enforce the agreement between the parties, and (iii) awarding

attorneys' fees without authority under either the agreement or Missouri law.  Similarly, MEMC

believes the Award should be vacated because it evidences a manifest disregard of Missouri law.

MEMC established in its initial Memorandum that the Arbitrator in this case applied equitable

principles and his own individual concept of fairness, while completely disregarding the

Severance Agreement and Missouri law.

1

A significant portion of Pirooz's Memorandum in Opposition is spent arguing that it truly would be unfair and inequitable to require Mr. Pirooz to return the $300,000 in benefits to his former employer despite the fact that he agreed to do so if he went to work for another company that made or sold products "competitive with or similar to" MEMC products.[1]  Nonetheless, just as the equitable considerations had no place in the underlying arbitration proceeding involving a breach of contract action, these equitable arguments cannot be considered when evaluating whether the requirements of 9 U.S.C. §10(a)(4) have been met such that the Award must be vacated.[2]  This Court must focus on whether the Arbitrator in this case interpreted and enforced the Severance Agreement between the parties and whether he acted in accordance with Missouri law.[3]

---

[1] Pirooz's brief also suggests that MEMC is a large public company seeking relief from an individual former employee and therefore MEMC should somehow be ashamed of seeking the return of its money when Pirooz went to work for Soitec.  An enormous amount of effort was spent by Pirooz's lawyers, both at the arbitration hearing and in the Memorandum filed with this Court, attacking MEMC's motivation for bringing this action to get its money back from Pirooz.  For example, counsel argues that Soitec is not a threat to MEMC's business, that the company had no reason to terminate Pirooz and thus it would be unfair and punitive to make Pirooz give the money back.  Stated another way, the argument appears to be that since MEMC has significantly more money than Pirooz and since Pirooz was fired and further waited for 15 months before he went to work for Soitec (which in Pirooz's view should not be a concern for MEMC), Pirooz should not have to honor his promise to return the money he accepted.  While it is conceivable that one view may be that it would be inequitable for Pirooz to give back the money he agreed to give back under these circumstances, there is no legal basis to disregard the Severance Agreement and refuse to enforce Pirooz's promise to return the money when he elected to go to work for Soitec.  Unfortunately, in what was likely an honest attempt by the Arbitrator to help Pirooz escape the consequences of what he agreed to in the Severance Agreement, Mr. Gianaloukis either misunderstood or disregarded his role as the Arbitrator in this case (which was to enforce the agreement between the parties in accordance with Missouri law).  Contrary to the arguments made by the lawyers for Pirooz, the role of the Arbitrator was not to consider whether it would be fair or equitable to require Pirooz to return the money he agreed to return in exchange for his promise not to go work for a company that sold products "competitive with or similar to" MEMC products.  The fairness of requiring Pirooz to give back what he agreed to give back has no bearing in this action and MEMC is confident that this Court will recognize that these issues should not be considered.

[2] MEMC certainly does not concede that Pirooz was treated unfairly and vehemently disagrees with much of the information recounted by Pirooz about his termination and the circumstances of his going to work for Soitec.  For example, in his brief Pirooz gives the impression that he forthrightly and voluntarily disclosed to MEMC that he was going to work for Soitec.  The reality is that Pirooz never notified MEMC of his intent to work for Soitec either during the period of time he was negotiating his employment or after he went to work for Soitec.  Rather, MEMC found out inadvertently through a third-party of Pirooz's breach of his promise in the Severance Agreement.

[3] Counsel has also suggested that Soitec is not a threat to MEMC's business and therefore the action against Pirooz is punitive.  Curiously, Pirooz attaches great import to the fact that MEMC did not seek an injunction and did not attempt to put him out of work.  While these issues have no bearing on the Court's review of this action, MEMC

2

The primary substantive argument made by Pirooz is that MEMC should have anticipated (before even receiving the Arbitrator's decision) that the Arbitrator would exceed his powers, would ignore the requirements under the Severance Agreement and would disregard Missouri law. Apparently, Pirooz believes that MEMC should have argued in its post-hearing brief that the Arbitrator is prohibited from doing these things. According to Pirooz, because MEMC did not anticipate that the Arbitrator was not going to do his job, it has waived the right to assert that he did not do his job. For the reasons set forth below, this is not the law of waiver and none of the authority cited by Pirooz on this issue mandates this result.

In addition to the waiver defense, Pirooz argues that the Arbitrator did have the authority to apply equitable principles and refuse to enforce the terms of the Severance Agreement on equitable grounds because of AAA Rule 34 and certain language in the Severance Agreement. As explained below, Pirooz ignores and/or distorts the language and meaning of the terms of the Severance Agreement, as well as the scope of the applicability of AAA Rule 34.

## II.  STANDARD OF REVIEW

Counsel for Pirooz criticizes MEMC's characterization of the standard for vacating the award under 9 U.S.C. §10(a)(4). However, a careful review of the brief filed by each party demonstrates that there is no disagreement over the standard. Both MEMC and Pirooz recognize that the Court may vacate an arbitration award "where the arbitrators exceed their powers, or so imperfectly execute them that a mutual, final and definite award upon the subject matter submitted was not made." Both MEMC and Pirooz cite the Eighth Circuit case of *Hoffman v.*

respectfully suggests that if the goal was to punish and harass Pirooz, MEMC would have sought to put Pirooz out of work. It did not. Another irrelevant side issue raised by counsel for Pirooz involves whether Pirooz was fired with or without cause. While this issue has absolutely no bearing on the enforcement of the Severance Agreement, the parties disagree over whether his termination was for cause or without cause. Nonetheless, it is undisputed that the parties did agree to be neutral on this issue in the Severance Agreement.

*Cargill, Inc.*, 236 F.3d 458, 461-62 (8th Cir. 2001) which states that an award should be set aside where it is completely irrational or evidences a manifest disregard for the law.  Both MEMC and Pirooz further cite the *Hoffman* decision for the principle that an arbitration award is irrational where it fails to draw its essence from the agreement, and an arbitration decision manifests disregard for the law where the arbitrator clearly identifies the applicable, governing law and then proceeds to ignore it.  *Id.*

The fundamental disagreement in this case is whether the Arbitrator exceeded his powers by applying equitable principles instead of simply enforcing the Severance Agreement.  In addition, did the Arbitrator disregard Missouri law?  If he did either of these things, the Award must be vacated.  If he did not, the Award should be confirmed.  This issue has been fully briefed by the parties and there is no benefit to restating the arguments made by MEMC in its original Memorandum.

### III.  WAIVER

MEMC asserts that the subject Arbitration Award should be vacated under 9 U.S.C. §10(a)(4) because the Arbitrator exceeded his powers and because the Award evidences a manifest disregard for Missouri law.  Pirooz argues that MEMC should have anticipated that the Arbitrator would exceed his powers by disregarding the Severance Agreement and ignoring Missouri law and that by failing to argue in its arbitration briefs that the Arbitrator should not exceed his powers and ignore the law, MEMC somehow waived its right to do so now.

Waiver only applies where a party has acted with full knowledge of the facts.  *Middlesex Mutual Ins. Co.*, 675 F.2d 1197, 1204 (11th Cir. 1982).  MEMC cannot have been expected "to anticipate every possible defense or datum that might influence an arbitrator's award."  *ARMCO Employees Independent Federation, Inc. v. AK Steel Corp.*, 2005 WL 1993409 (6th Cir. Aug.

4

2005; Rehearing En Banc Denied Nov. 2005); citing *United Food & Commercial Workers v. John Hoffmeister & Sons, Inc.*, 950 F.2d 1340 (7th Cir. 1991).  Therefore, in order to prevail on its "waiver" defense, Pirooz has the burden of firmly establishing that MEMC knew that the arbitrator would exceed his powers, that he would ignore Missouri contract law and that he would disregard the Severance Agreement.  Absent such a showing, Pirooz's waiver argument fails.

9 U.S.C. §10(a)(4) authorizes vacating an arbitration decision if the arbitrator exceeds his powers.  If, as Pirooz suggests, a party that demands arbitration must anticipate and object to every possible circumstance in which an arbitrator may exceed his powers prior to or at the time of the arbitration, the standard laid out in 9 U.S.C. §10(a)(4) would be virtually meaningless.  A party does not go in to an arbitration expecting that an arbitrator will ignore the agreement between the parties or otherwise exceed the arbitrator's powers granted in the agreement.  Obviously, if a party knew going in to an arbitration that the party charged with enforcing the agreement between the parties would fail to do so and would ignore the law, a party would never choose arbitration.  Moreover, if a party is required to anticipate and address all the ways that an arbitrator may exceed the arbitrator's powers there would almost never be a situation in which an award could be challenged, because of the difficulty in anticipating and raising each and every possible ground under the statute for vacating the award.

Putting aside the fact that common sense dictates that a party does not have the burden of anticipating that an arbitrator will exceed the arbitrator's powers or will disregard the law, none of the authority cited by Pirooz creates such a burden.  Rather, all but one of the cases cited by Pirooz are distinguishable from the present situation because they all involved arbitration participants who failed to raise an issue pertinent to the claim at arbitration which they later

5

attempted to argue on review.  *Zingg v. Dept. of Treasury, IRS*, 388 F.3d 839 (Fed. Cir. 2004)

(Claimant, former IRS employee, waived right to review by failing to raise or present evidence

that there was nexus between termination by IRS and employee's conduct)[4];  *White v. Dept. of*

*Justice*, 328 F.3d 1361 (Fed. Cir. 2003) (Claimant, former federal prison guard, waived right to

argue termination was improper due to fact that conviction did not prevent his employment,

where he did not raise such issue at initial hearing); *Ganton Technologies, Inc.  v. International*

*Union, United Auto, Aerospace and Agricultural Implement Workers of America, U.A.W., Local*

*627*, 358 F.3d 459 (7th Cir. 2004) (Successor company waived argument that it was not proper

party by failing to argue such at the arbitration); *Brook v. Peak International, Ltd.*, 294 F.3d 668

(5th Cir. 2002) (Party losing arbitration waived ability to challenge arbitrator selection process by

failing to raise issue at arbitration).  The only other case cited by Pirooz in favor of his position

involved a claimant who failed to even appear for the arbitration and later filed a motion to

vacate. *International Brotherhood of Electrical Workers, Local Union No. 545*, 380 F.3d 1084

(8th Cir. 2004).  None of these cases involve a situation where a party is asserting that another

party should have anticipated that the arbitrator would exceed the arbitrator's powers, would

ignore the agreement between the parties or would disregard applicable law.

In the present matter, MEMC properly stated the issue to be considered by the Arbitrator

as a simple claim for money damages for breach of contract.  The Arbitrator then proceeded to

decide the arbitration on grounds outside of those applicable to the issue raised by MEMC.  It is

not until the Arbitration Award was received that MEMC became aware that the Arbitrator had

ignored the Severance Agreement and had exceeded his powers by applying equitable principles

---

[4] It is also important to recognize that the *Zingg* case involved 5 U.S.C. Section 7703(c), which sets forth a
completely different standard of review than the case at bar.

and awarding attorneys' fees to Pirooz. (Ex. 46).  MEMC now seeks to have the Court vacate the Arbitration Award and order a new arbitration not over an issue that was not raised by MEMC at the arbitration, but over an improper standard utilized by the Arbitrator.

 Pirooz argues in his Memorandum that MEMC should have been on notice prior to the arbitration that the issue of equity would be a consideration at the arbitration hearing.  Putting aside the fact that this is not the standard for waiver, a review of the record demonstrates that this action was treated by both parties as an ordinary breach of contract action up to the time of the hearing and equitable considerations were not an issue.  Specifically, MEMC's Demand for Arbitration identified the dispute as "Breach of Contract" in which MEMC was seeking money damages. (Ex. 41).  There were no equitable issues raised or presented.  Similarly, MEMC's pre-hearing brief contains no argument whatsoever regarding the fairness or equities of the case. (Ex. 42).  Instead, MEMC argued contract law, covenants not to compete and damages. (Ex. 42; pp. 8 & 9).  Even Pirooz's pre-hearing brief centers on contract law and the specific language of the various agreements between the parties, rather than matters of fairness or equity.  Pirooz could only come up with two references in his entire pre-hearing brief which even referenced equity. (Ex. 43).  The first appears in the second footnote on page 14. (Ex. 43).  The only other appears in the very last sentence of the brief when Pirooz refers to what he alleges are MEMC's "patently unfair, inequitable and unsubstantiated claims." (Ex. 43).  The remainder of Pirooz's pre-hearing brief is spent arguing whether or not Pirooz breached his agreements with MEMC. (Ex. 43).  This certainly does not constitute clear notice to MEMC that the Arbitrator may elect to apply equitable principles to this dispute and ignore the plain contractual requirements of the Severance Agreement.  To the contrary, it evidences that Pirooz understood that this was a basic breach of contract action.

Pirooz argues that the issues of equitable principles and attorneys' fees were also raised at the arbitration hearing.  However, there was no transcript or other record of the hearing and, as such, no testimony of witnesses or statements of counsel or the Arbitrator can be considered.  It is interesting that Pirooz recognizes this is the case early on in his Memorandum, but seems to ignore this fact when he wants the Court to consider something that was purportedly said or raised at the hearing which he believes is helpful to his arguments.[5]  Nonetheless, unsupported statements by counsel about what was said or not said by the Arbitrator or participants at the hearing certainly cannot be the basis for a finding that MEMC waived its right to have the award vacated because the Arbitrator exceeded his powers and disregarded the law.  The only other record evidence which exists would be the post-hearing briefs.  However, even if equitable issues were raised by Pirooz in his post-hearing brief, this would not be relevant to the waiver issue because anything raised at that point (i.e. at the conclusion of the briefing) would not provide MEMC with an opportunity to respond and address the issues raised.

There has also been no waiver of MEMC's right to challenge the award of attorneys' fees to Pirooz as being in manifest disregard of Missouri law or as a remedy exceeding the Arbitrator's powers under the plain language of the Severance Agreement.  As extensively briefed in MEMC's Memorandum, there is absolutely no basis for an award of attorneys' fees to Pirooz.  As such, there would be no reason for MEMC to anticipate that the Arbitrator would make any award of attorneys' fees to Pirooz.  Apparently, it is Pirooz's position that MEMC should have anticipated that the Arbitrator would disregard the Severance Agreement and Missouri law and award attorney fees to Pirooz simply because Pirooz requested fees in the last

---

[5] The lawyers for Pirooz can recount what purportedly was said at the hearing safe in the knowledge that MEMC's current general counsel and outside counsel were not present at the time of the hearing and thus cannot confirm or

paragraph of his pre-hearing brief.  Despite the fact that this is not the standard, this single

reference was the only mention of an attorney fee award to Pirooz at any time before the hearing.

 Any request for attorneys' fees by Pirooz in his post-hearing brief would be irrelevant to the

waiver issue because at that point there would be no opportunity for MEMC to address the issue

as briefing would have been completed.  Moreover, as discussed above, any allegations by

Pirooz that attorneys' fees were discussed at the hearing by the Arbitrator or counsel must be

disregarded by this Court because there is no record.

## IV.  APPLICATION OF EQUITABLE PRINCIPLES

There is no dispute that the Arbitrator's authority in this case is both granted and limited

by the Severance Agreement.  MEMC believes the Arbitrator exceeded the authority granted in

the Severance Agreement by ignoring the contract between the parties and applying equitable

principles in refusing to enforce it.  Again, if this Court determines that the Arbitrator did apply

equitable principles and thus exceeded his authority, the Award must be vacated.  Pirooz

essentially makes three arguments in an attempt to avoid having the Award vacated because of

the Arbitrator's improper use of equitable principles.

A.      Finding of No Breach of the Severance Agreement.  Counsel for Pirooz first makes a

token argument that the Arbitrator made a finding that Pirooz did not breach the terms of the

Severance Agreement and therefore the Award should be upheld.[6]  However, apparently even

---

deny what was said or not said.

[6] Specifically, Pirooz argues that there was a finding by the Arbitrator that the products of Soitec were not
"competitive with" the products of MEMC.  Putting aside the fact that the issue of "similar to" was not addressed at
all, as more fully explained in Subpart B of Section IV of MEMC's original Memorandum, there were numerous
findings by the Arbitrator that established that MEMC sold products which were "competitive with" Soitec products.
 As the Arbitrator stated in his Award "MEMC's agency agreement with Ibis had produced immaterial royalties over
several years of less than one-half million dollars for sales of Ibis SOI product." [Ex. 46; p. 7] Despite
acknowledging such SOI sales by MEMC in the text of the decision, the arbitrator nonetheless found that:

"(d)uring the two year period ending July 30 (or 31), 2004, there was no evidence that MEMC was in
competition (and certainly not material competition) for the sale of SOI wafers.  MEMC had no SOI wafers

Pirooz realizes that anybody reading the Arbitration Award will quickly recognize that any reference to Pirooz not breaching the Severance Agreement was based on the Arbitrator's stated belief that it would be inequitable to require Pirooz to give back what he agreed to give back. For example, Pirooz even admits that the Arbitrator applied equitable principles in arriving at his award, but claims that the Arbitrator "did not only base his decision" on said principles. (Pirooz Memorandum, p. 20).  The language used by the Arbitrator in the Award contradicts this claim by Pirooz, as it is apparent that the Arbitrator's Award was completely colored by his opinions regarding the fairness and equity of the situation.

In the beginning, middle and end of his decision, the Arbitrator's reliance on the standards of fairness and equity are obvious.  The Arbitrator's first paragraph, after stating the dispute between the parties, discusses the equitable axioms that "equity abhors forfeitures and they are not favored by law," and that "forfeitures are to be prevented when it is inequitable to allow a forfeiture to be enforced." [Ex. 46; p. 3].  The Arbitrator then spends an entire paragraph discussing what he perceived to be unfair treatment of Pirooz by MEMC prior to the Severance Agreement being entered into, mentioning multiple times that Pirooz was terminated without cause. [Ex. 46; p. 3].  Later in the Award, the Arbitrator spends more than a page discussing ways in which the Arbitrator felt that Pirooz was somehow shortchanged by the Severance Agreement that Pirooz entered into voluntarily. [Ex. 46; pp. 7 & 8].

The most telling portion of the Arbitrator's Award comes at the very end of his analysis in which he renders his decision to deny MEMC's claims in the arbitration.  The Arbitrator states, in what can only be described as clear and unequivocal verbiage, that "(u)nder all the

<hr />

qualified for sale to its or SOI's customers.  For this additional reason, Dr. Pirooz did not breach his MEMC contract by his work for Soitec from November 1, 2003 to the end of July 2004." [Ex. 46; P. 6]

circumstances brought out in the hearing, it would be unfair and inequitable to enforce this

forfeiture as either a legal or equitable remedy."  If, as Pirooz suggests, the Arbitrator's decision

in this matter was properly made based upon contractual considerations, one would have

expected the Arbitrator, in this key, summarizing statement, to have said something to the effect

that "(u)nder all of the circumstances brought out in the hearing, it is found that Pirooz did not

breach any of his agreements with MEMC."  This distinction between what the Arbitrator

actually said, and what he didn't say, tells the Court all it needs to know about the manner in

which the Arbitrator arrived at his award.

B.      AAA Rule 34.

        Pirooz next argues that Rule 34 of the American Arbitration Association Rules for

Resolving Employment Disputes ("AAA Rule 34") permitted the Arbitrator free reign to apply

equitable principles in this breach of contract action.  Pirooz points out that AAA Rule 34

provides that the Arbitrator "may grant any remedy or relief that the arbitrator deems just and

equitable, including any remedy or relief that would have been available to the parties had the

matter been heard in court" and that the parties reference AAA Rule 34 in the arbitration clause

of the Severance Agreement.  Pirooz then suggests that the mere reference to AAA Rule 34

results in a carte blanche expansion of the Arbitrator's powers such that it is perfectly

appropriate for him to refuse to enforce the Severance Agreement based on equitable

considerations.[7]  Unfortunately, Pirooz fails to point out the limited context in which the parties

adopted AAA Rule 34 and he vastly overstates its applicability in this case.  As set forth in detail

below, a full reading of the language of the arbitration clause demonstrates that the parties

---

[7] Interestingly, Pirooz has never mentioned or raised the applicability of AAA Rule 34 prior to this time and
certainly has never asserted that the Arbitrator's authority or power is somehow derived from this AAA Rule 34 (as

11

simply adopted AAA Rule 34 for purposes of the procedural aspects of any dispute and it was not adopted to govern the "substantive" claims in the arbitration.

The parties agreed, in the arbitration clause of the Severance Agreement, that "**(p)rocedurally**, the arbitration will be governed by the then-current Rules for Resolution of Employment Disputes of the AAA. *emphasis added* [Ex. 9; ¶ 13].   In his Memorandum, Pirooz repeatedly omits the above quoted critical language from the Severance Agreement.

A few sentences later in the arbitration clause, the parties outlined the substantive authority that the arbitrator possessed in the arbitration.  The final portion of the arbitration clause states:

> "The Arbitrator shall have the authority to award costs of the Arbitration (including attorney's fees) **in a manner consistent with the controlling substantive claim at issue**.  Similarly, the Arbitrator shall have the authority to award damages (or other relief) **consistent with the substantive claim being asserted**." *emphasis added*. [Ex. 9; ¶ 13].

The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention.  *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. En Banc. 1973).  Parties are generally free to contract as they wish, and courts will enforce contracts according to their plain meaning.  *Utility Service and Maintenance Inc. v. Noranda Aluminum, Inc.*, 163 S.W.3d 910, 913 (Mo. En Banc. 2005).

The parties went out of their way when drafting the arbitration clause to draw a distinction between how the arbitration would be handled procedurally as opposed to substantively.  Had the parties intended to permit the arbitrator, under AAA Rule 34, to resolve

---

opposed to Missouri law).  Pirooz perceives nothing wrong with raising this argument and authority for the first time in this Court.  This conduct further supports the conclusion that Pirooz's  expansive view of "waiver" is unfounded.

the substantive issues of the arbitration by applying equitable principles, the language of the arbitration clause would have read "(t)he arbitration will be governed by the then-current Rules for Resolution of Employment Disputes of the AAA."  Instead, the parties contracted that "(p)rocedurally, the arbitration will be governed by the then-current Rules for Resolution of Employment Disputes of the AAA."  [Ex. 9; ¶ 13].

To determine the ordinary meaning of a term, Missouri courts will consult standard English language dictionaries.  *Farmland Industries, Inc. v. Republic Insurance Co.*, 941 S.W.2d 505, 508 (Mo. En Banc. 1997).  Black's Law Dictionary defines "procedure" as:

> "The mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or defines the right, and which, by means of the proceeding, the court is to administer; the machinery, as distinguished from its product."  Black's Law Dictionary 836 (Abridged 6th ed. 1991)

The plain meaning of the term "procedurally" before the statement that the AAA Rules for Resolution of Employment Disputes would govern the arbitration is indicative of the party's intent.  It is clear that the parties intended to utilize the AAA Rules for Resolution of Employment Disputes for procedural issues involving the arbitration, but that the award of the arbitrator should have been "consistent with the substantive claim being asserted."

The only case cited by Pirooz cites on the AAA Rule 34 issue is the 10th Circuit decision of *Brown v. Coleman Company, Inc.* 220 F.3d 1180 (10th Cir. 2000).  The court in the *Brown* case stated that an arbitrator "**may** have broad equity powers **if** the rules under which he is operating provide for equitable relief." emphasis added. *Brown* at 1183.  In that case, there was no evidence that AAA Rule 34 had been adopted to govern procedural aspects of an arbitration while substantive relief available would be dictated by the "controlling substantive claim at issue" which will necessarily involve state law.

13

In this case, the plain language of the arbitration clause directs that the procedural aspects of any arbitration will be governed by AAA Rule 34, but that the relief available must be "consistent with the substantive claim being asserted."  An arbitrator has no authority to ignore the plain language of an agreement when the agreement states limitations to the scope of his authority. *Hawaii Teamsters and Allied Workers Union, Local 996 v. United Parcel Service*, 241 F.3d 1177, 1181 (9th Cir. 2001).  Thus, the Arbitrator in this case was not permitted under the arbitration clause to use AAA Rule 34 to decide the substantive issues of the arbitration on equitable grounds.

C.      Other Relief Language of Arbitration Clause.

Pirooz's final argument in justifying the Arbitrator's use of equitable principles in this case is based on an incomplete and selective reading of the arbitration clause in the Severance Agreement.  Specifically, Pirooz argues that the phrase "the Arbitrator shall have the authority to award damages (or other relief) consistent with the substantive claim being asserted," somehow can be inferred to mean that the parties contracted to allow the Arbitrator to decide this breach of contract claim on equitable grounds.  This position makes no sense.

MEMC is only seeking forfeiture of the severance benefits paid to Pirooz as part of the Severance Agreement entered into voluntarily by both MEMC and Pirooz.[8] As stated in

---

[8] The Arbitrator, in his award, and Pirooz, repeatedly in his brief, point out that MEMC had the right to seek equitable relief in court, but chose, instead, to enforce its contractual rights under the Severance Agreement in arbitration.  This choice by MEMC was not in any way an admission by MEMC that Pirooz's special knowledge of MEMC's products, processes and business dealings would not be useful to Pirooz at Soitec and, therefore, damaging to MEMC.  Under the Severance Agreement and the Confidentiality Agreement which bound Pirooz, he was permitted, two years following his termination for any reason, to work for a company that produced products competitive with or similar to MEMC's products.  Pirooz accepted the position with Soitec approximately 15 months after leaving MEMC.  Would MEMC have known that Pirooz was seeking employment with a competitor, and then attempted to enforce its equitable rights to seek an injunction in court, at the most, it would have only prevented Pirooz from employment at Soitec for about a six month period (assuming an expedited process).  MEMC did not and does not wish to prevent Pirooz from obtaining employment.  It only seeks to receive reimbursement from Pirooz of the severance package MEMC provided to Pirooz based upon Pirooz's promise not to work for a

MEMC's original Memorandum, courts distinguish between actions which seek to prevent individuals from working for a competitor and those which seek forfeitures. Courts have long drawn "a distinction between provisions that prevent an employee from working for a competitor and those that call for a forfeiture of certain benefits should he do so." *Tatom v. Ameritech Corp.*, 305 F.3d 737, 744 (7th Cir.1988).

Had MEMC chosen, as its remedy in this matter, to seek injunctive relief which would have prevented Pirooz from continuing his employment with Soitec, equitable considerations would have been relevant. To the contrary, MEMC has only sought reimbursement of the consideration it paid to Pirooz for his promise to abide by the restrictions the parties agreed upon. As such, the remedy MEMC seeks is one of damages for breach of contract.

The arbitration clause of the Severance Agreement states that the arbitrator is granted authority to "award damages (or other relief) consistent with the substantive claim being asserted." [Ex. 9]. The Arbitrator's authority to award "other relief" was, like his authority to award damages, restricted to being "consistent with the substantive claim." As both Pirooz and the Arbitrator point out, MEMC never sought an injunction or any equitable relief. Moreover, the only "substantive claim" brought by MEMC was a claim for damages (the $300,000) for a single breach of contract. This "substantive claim" does not involve or permit consideration of equitable principles. As such, contrary to Pirooz's argument, the "or other relief" language does not constitute any authority for the Arbitrator to apply equitable principles on this "substantive claim" and does not provide Pirooz with a basis to rescue the Arbitrator's Award.

V. ATTORNEYS' FEES

---

competitor for two years. The fact that the Arbitrator and Pirooz have read so much into such a simple decision is baffling to MEMC.

In his attempts to save the attorney fee portion of the Arbitrator's Award, Pirooz argues that AAA Rule 34 and the "or other relief" section of the arbitration provision in the Severance Agreement provide the authority for the award of attorneys' fees to Pirooz.  However, the Arbitrator's Award does not mention either of these provisions as the basis for the attorneys' fees.  Rather, the Arbitrator's Award cites paragraphs 13 and 17 of the Severance Agreement in the discussion regarding attorneys' fees.  Regardless, just as AAA Rule 34 and the "or other relief" provision do not provide authority for applying equitable principles to the "substantive claim" involved in this dispute (i.e. breach of contract), they likewise do not provide authority for an award of attorneys' fees to Pirooz in this breach of contract action.

Pirooz next argues that paragraph 17 of the Severance Agreement provides authority for the Arbitrator's award of attorneys' fees by focusing on the word "defending" and ignoring the rest of the language in the provision.  He suggests to the Court that because the word "defending" is contained in the provision, an award to Pirooz of his fees in defending this breach of contract action is authorized by the Severance Agreement.  Despite Pirooz's argument, a careful reading of paragraph 17, in its entirety, reveals that it does not provide a basis for an award to Pirooz of fees under the facts and circumstances of this case.

As explained in MEMC's Memorandum, paragraph 17, by its express terms, is only triggered "if it is finally determined by a court or arbitrator that either" Pirooz or MEMC "has violated any promises contained in the" Severance Agreement.  In this case, there was no finding that either MEMC or Pirooz violated any obligations under the Severance Agreement.  In fact there was not even a claim or counterclaim asserted by Pirooz against MEMC alleging any violation by MEMC of the Severance Agreement.  Moreover, there was no finding in the Award

16

that either party breached the Severance Agreement.  Clearly, paragraph 17 was never triggered and provides no basis for an award of attorneys' fees.

Paragraph 13 of the Severance Agreement also does not provide a basis for an attorney fee award under the facts and circumstances of this case.  That provision simply means that if the controlling claim at issue in the arbitration supports an entitlement to attorneys' fees, the Arbitrator can award fees.  For example, the Arbitrator would be authorized to award fees under paragraph 13 if this arbitration involved a claim under a Federal statute which provided for attorneys' fees or if it involved a contract which stated that the prevailing party is entitled to fees. As explained in MEMC's original Memorandum, this is not the situation in the case at bar. In short, the plain terms of the Severance Agreement provide no basis for an award to Pirooz of his attorneys' fees.  Contrary to Pirooz's contention, there is no room for interpretation on this issue.

Finally, Pirooz also seems to suggest that under the facts and circumstances of this case Missouri law permits an award of attorneys' fees in order to "equitably" balance the benefits.[9] However, Pirooz misapplies this extremely narrow exception to the general rule in Missouri that each side bears its own attorneys' fees.  The equitable balancing of benefits is permissible only in very unusual circumstances.  *Chapman v. Lavy*, 20 S.W.3d 610, 614 (Mo. App. E.D. 2000). "'Very unusual circumstances' has been interpreted by Missouri courts to mean an unusual type of case, or extremely complicated  litigation wherein the legal actions taken by the parties significantly differ from other actions taken by other parties in similar situations, or by others trying to achieve the same results."  Primarily, "very unusual circumstances" have been found in

---

[9] Although obviously not dispositive on the issue, there is no evidence that Pirooz himself, as opposed to his employer, Soitec, has actually paid the $100,000 plus fees of Armstrong Teasdale and his Boston lawyers.

cases involving trusts and estates. *DCW Enterprises, Inc. v. Terre du Lac Association, Inc.*, 953 S.W.2d 127, 132 (Mo. App. E.D. 1997); citing *Feinberg v. Adolf K. Feinberg Hotel Trust*, 922 S.W.2d 21, 26 (Mo. App. E.D. 1996). "Very unusual circumstances" have also been found to occur where a litigant successfully created, increased, or preserved a fund in which non-litigants were entitled to share, and a court ordered non-litigants to contribute their proportionate share of the attorney fees. *Id.*; citing *Feinberg* at 26 and *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652, 661 (Mo. 1962). In almost all other situations, "very unusual circumstances" are not present. *Siliven v. Cowhick*, 838 S.W.2d 504, 506 (Mo. App. E.D. 1992)(Injunction action did not meet standard); *Boone Valley Farm, Inc. v. Historic Daniel Boone Home, Inc.*, 941 S.W. 720 (Mo. App. E.D. 1997)(Property line dispute not deemed "unusual."); *Gurley v. Montgomery First National Bank*, 160 S.W.3d 863 (Mo. App. S.D. 2005)(Court found "nothing unusual" about negligent misrepresentation case); *Ohlendorf v. Feinstein*, 697 S.W.2d 553 (Mo. App. E.D. 1985)(Action for breach of partnership agreement not "unusual type of case" to warrant attorney's fees). There is nothing "unusual" about this basic breach of contract case which would trigger this narrow exception.

## VI.  MANIFEST DISREGARD OF LAW

Pirooz's  entire argument against MEMC's claim that the Arbitrator's Award was in manifest disregard of the law is that MEMC never stated in its brief any legal principle that the Arbitrator identified and then proceeded to ignore. However, the legal principles that the Arbitrator identified and then ignored were clearly pointed out in the original Memorandum filed with this Court. Specifically, MEMC stated in the first full paragraph of page 17 of its Memorandum that:

> "(e)arly on in his decision, the arbitrator correctly recognized that this is an action for damages by MEMC 'for the alleged breach of contract' by Pirooz. [Ex. 46; P.2]. Nonetheless, even a cursory review of the decision demonstrates that the arbitrator incorrectly considered this an equitable matter and made his decision on equitable grounds, as opposed to applying appropriate Missouri contract law to decide what he clearly admitted was a breach of contract action." [Pirooz Memorandum; P. 17].

As set forth above, the Arbitrator recognized that this was a breach of contract action involving principles of contract construction under Missouri law. Nonetheless, he ignored this fact and applied equitable principles in refusing to enforce the agreement between the parties. One can think of no clearer example of a "manifest disregard" for the law. These circumstances fall squarely within the standard set out by the 8th Circuit in the *Hoffman* case, and, therefore, the Arbitration Award should be vacated.

For reasons stated above, the Arbitrator's award of attorney fees to Pirooz is also in manifest disregard of the law. Once again, Pirooz argues that the Arbitrator did not clearly identify any legal principle which he later ignored. However, a review of the Arbitration Award demonstrates this is not the case. On page 9 of the Arbitration Award, the Arbitrator clearly identifies paragraphs 13 and 17 of the Severance Agreement as providing the applicable legal basis for attorneys' fees. Interestingly, the Arbitrator does not invoke AAA Rule 34 or the "other relief" section of the arbitration provision. The Arbitrator then turns around and completely disregards this authority, and the governing law associated with it, by awarding attorney fees to Pirooz when Pirooz is neither entitled to attorneys' fees under the plain language of the Severance Agreement or under Missouri law. Once again, the Arbitrator's actions fall squarely within the *Hoffman* standard, and the Arbitrator's award of attorney fees to Pirooz should be vacated.

## VII.  FINAL AND DEFINITE AWARD

19

The final argument made by MEMC in its Memorandum is that the Arbitrator's Award was not final and definite because the Arbitrator failed to address or consider whether the products produced by Soitec (silicon wafers) were "similar to" the products produced by MEMC (also silicon wafers).  If any products of Soitec were "similar to" any products of MEMC then Pirooz breached the contract by going to work for Soitec.[10]  MEMC's only point on this topic is that this was never considered or addressed by the Arbitrator.  There is nothing in the decision which references any consideration of this issue and, as pointed out in MEMC's Memorandum, the findings that the Arbitrator did make in his opinion lead to the inescapable conclusion that Soitec's silicon wafers are indeed "similar to" MEMC's silicon wafers such that Pirooz breached the "similar to" aspect of the Severance Agreement.  In other words, it is obvious the Arbitrator did not consider the alternative "similar to" requirement because if he had done so, he would have necessarily made a finding that Soitec does have products "similar to" (as opposed to "competitive with") MEMC products.

After labeling MEMC's "similar to" argument "frivolous," Pirooz goes on to say that he disagrees with the argument and believes the "similar to" issue was addressed and considered by the Arbitrator.  However, he does not cite or point to a single statement or reference to this specific issue.  Nor can he point to any reference to the "similar to" issue because one does not exist.  The best Pirooz can do is point to the general language in the Award where the Arbitrator says all claims against Pirooz are denied.  Based on this general language, Pirooz makes the leap that the Arbitrator must have considered the "similar to" argument.  Using Pirooz's logic, the

---

[10] This is simply a separate aspect of the Severance Agreement which was also breached by Pirooz.  As described in Section IV(A) above in this Reply, there were numerous findings by the Arbitrator which also established that MEMC sold products "competitive with" products of Soitec.  See also Subsection B of Section IV of MEMC's original Memorandum.  Of note is that despite the fact that the Arbitrator found that MEMC sold SOI wafers and, yet, found that MEMC products and Soitec products were not "competitive with" each other, the Arbitrator never

only way that the Arbitrator's award could be vacated on this issue on finality and definiteness grounds would have been in a situation where the Arbitrator stated that his award was "in full settlement of all claims submitted in the arbitration, other than the matter of the 'similar to' consideration, which this Arbitrator does not address."  Of course, this will never occur.  Rather than rely on the conclusory, general language at the end of the decision, this Court must evaluate the text of the Arbitrator's Award in its entirety related to the "similar to" issue.  For all the reasons set forth in MEMC's Memorandum on this topic, MEMC is confident that the Court will determine that the Arbitrator did not consider whether MEMC's silicon wafers were "similar to" Soitec's silicon wafers and, as such, the Arbitrator's Award was not final and definite under 9 U.S.C. §10(a)(4).


VIII.  <u>CONCLUSION</u>

The overriding theme of the Arbitrator's decision is that he believes it just is not fair or right to make Pirooz give back what he agreed to give back.  Pirooz carries this theme forward in his Memorandum in his attempts to save the Arbitrator's decision.  Unfortunately, the very making of this argument by Pirooz reinforces the fact that the Arbitrator indeed ignored his narrow job of enforcing the Severance Agreement and thus exceeded his powers and disregarded Missouri law.  As such, 9 U.S.C. §10(a)(4) requires that the Award be vacated.

Dated: January 3, 2006

---

addressed the "similar to" language of Pirooz's covenant not to compete.

SAUTER SULLIVAN, LLC


By:  /s/ Christopher K. Geldmacher
     Kevin A. Sullivan, #27523
     Christopher K. Geldmacher, #511688
     3415 Hampton Avenue
     St. Louis, MO 63139
     Telephone:      314-781-3222
     Facsimile:       314-781-2726
     E-mail: ksullivan@ss-law.net
     E-mail: cgeldmacher@ss-law.net



Certificate of Service

The undersigned hereby certifies that a copy of the foregoing Defendant MEMC Electronic Materials, Inc.'s Reply To Plaintiff's Memorandum in Opposition To Defendant's Motion to Vacate Arbitration Award was served electronically on counsel of record on this 3rd day of January, 2006.

Michael B. Kass
Armstrong Teasdale, LLP
One Metropolitan Square, Suite 2600
St. Louis, MO 63102-2740

                                   /s/ Christopher K. Geldmacher