UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAEED PIROOZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 4:05MC00521CDP |
| ) | |
| MEMC ELECTRONIC MATERIALS, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY MEMORANDUM**

COMES NOW Plaintiff Saeed Pirooz, and for his Surreply to Defendant's Reply Memorandum, states as follows:

**I. INTRODUCTION**

MEMC's Reply evades the fatal aspects of its Motion to Vacate. In particular, MEMC refuses to admit the obvious in relation to its failure to make its central arguments at Arbitration (which, in turn, results in its waiver of those arguments). That is, MEMC has not owned-up to the fact that it had actual knowledge of the existence of the following two issues: (1) the inequity of awarding a forfeiture against Pirooz and (2) the possibility that Pirooz would collect attorneys' fees should he prevail. Moreover, MEMC has yet to truly concede the "extraordinary deference" that must be given to Arbitrator Gianoulakis' Award and, further, that in order to find that Arbitrator Gianoulakis "manifestly disregarded the law," the applicable legal principles that were allegedly disregarded must have been both (1) clearly identified in the Arbitration proceedings and (2) ignored by the Arbitrator. Finally, MEMC is still incorrect concerning the breadth of the Arbitrator's scope of authority in deciding this matter.

For the reasons stated herein and in Pirooz's Memorandum in Opposition, the Court should deny MEMC's Motion to Vacate and grant Pirooz's Complaint for Confirmation of the Arbitration Award.

## II.  ARGUMENT

**A.    MEMC Had Actual Notice of the Pertinent Issues, the Consequence of Which is MEMC's Wavier of its Arguments on those Matters.**

As set forth in Pirooz's Memorandum in Opposition, MEMC waived its ability to obtain vacatur of the Arbitration Award because it failed to argue at Arbitration that (1) considerations of equity in determining the outcome of the case would be inappropriate and (2) that an award of attorneys' fees to Pirooz would be inappropriate.  Pirooz Memo. in Opp., pp. 11-12, 14-18.  In response, MEMC wants the Court to believe that Pirooz's waiver argument requires a finding that MEMC had to "anticipate and object to every possible circumstance in which an arbitrator may exceed his powers" in order to rule in favor of Pirooz.  MEMC Reply, p. 5.  Pirooz did not and does not predicate its waiver argument on such a position.  *See* Pirooz Memo. in Opp., pp. 11-12, 14-18.  Nevertheless, predicated on its own fallacious presentation of Pirooz's arguments, MEMC goes on to argue that it could never have anticipated that the Arbitrator would consider principles of equity in making his ruling or that he would contemplate awarding attorneys' fees to Pirooz.  MEMC Reply, pp. 4-9.  The house of cards built by MEMC in making this argument cannot and does not withstand an even cursory scrutiny of the applicable facts or law.

    1.    <u>MEMC Was Well-Aware That (a) Pirooz Argued Before and During the Hearing that the Equities Mitigate Against a Damages Award; (b) the Arbitrator Would, in Fact, Consider Principles of Equity in Issuing His Award; (c) Pirooz Was Seeking Attorneys' Fees in the Event that He Prevailed; and (d) the Arbitrator Would, in Fact, Consider Pirooz's Request for Fees.</u>

Contrary to MEMC's presentation, not only did MEMC not need a crystal ball in order to know that the Arbitrator might (or would) consider equitable principles and Pirooz's claimed

2

entitlement to attorneys' fees, but the existence of those issues were clear and present throughout the proceedings.  So much so, in fact, that even MEMC addressed whether it would be fair and equitable for the forfeiture to be awarded in its Post-Arbitration Brief.  Pirooz Ex. 7, pp. 19-20.  Indeed, Pirooz made it clear from the get-go that his position was that awarding the forfeiture sought by MEMC would be inequitable.  Pirooz Ex. 2, pp. 1, 5-6; Ex. 3, pp. 1, 3, 11-15.  For example, three of his five "affirmative defenses" in his Answering Statement were defenses in equity.  Pirooz Ex. 2, pp. 5-6.  Moreover, in the **opening line** of his Pre-Arbitration Brief, Pirooz argued that "MEMC's claims are both unmeritorious and **inequitable** . . ."  Pirooz Ex. 3, p. 1.  Pirooz went on to explain why.  *Id*. at pp. 1-4, 11-15 (emphasis added).  *See also* Pirooz Memo. in Supp., pp. 12, 14-18.[1]  Nonetheless, MEMC never argued that equitable defenses were *per se* inappropriate.

Not only did MEMC know that *Pirooz* was arguing for a ruling in his favor based on the inequitable nature of the remedy sought by MEMC, but MEMC had actual knowledge that *Arbitrator Gianoulakis'* consideration of equitable principles in determining whether to award the damages sought by MEMC may be "indispensable" to his eventual decision, as was the case in *Ganton Technologies, Inc. v. Int'l Union, United Auto., Aero., and Agricult. Workers of Amer., U.A.W., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004).  MEMC does not contest the fact, raised in Pirooz's Memorandum in Opposition, that Arbitrator Gianoulakis specifically asked the parties

---

[1] MEMC's argument before this Court that equitable principles should not have been considered by the Arbitrator is akin to the "sandbagging" the Court in *John Hofmesiter and Son* sought to guard against when it found a waiver of an argument in that case.  *United Food & Commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.2d 1340 (7th Cir. 1991).  Indeed, if parties were permitted to withhold making their arguments at arbitration, and then use those arguments in an attempt to prevail on a motion to vacate the award, "much of the efficiency and usefulness of arbitration would be lost."  *Id.* at 1344.

3

to address whether the remedy sought by MEMC was equitable.  Even MEMC argued forcefully in its Post-Arbitration brief that the equities supported awarding the damages sought by MEMC. Pirooz Ex. 7, at pp. 18-20.  In its Post-Arbitration brief, MEMC argued, in part:

> The magnitude of [the contract damages sought by MEMC] merely shows the great benefits Dr. Pirooz received from the promises of the General Release and Waiver.  MEMC would not have entered into the General Release and Waiver, nor would MEMC have provided Dr. Pirooz over three hundred thousand dollars in benefits, if MEMC had known that a little more than a year after leaving MEMC, Dr. Pirooz would be working at a high position for Soitec and calling upon Intel.  The damages sought in this case are simple and concrete and admitted.  Dr. Pirooz naturally wants to keep the money he was paid and received.  However, **it is universally unfair** for Dr. Pirooz to receive and keep the benefits when he did not keep his promises.  Aside from breaching his contract by going to work for Soitec, Dr. Pirooz is now also resisting his written promise that a breach of his obligations would require the return of the benefits he has received.  **It is not unfair to require someone to keep his promises nor is it unfair to get your money back when promises are not kept**.

*Id.*, p. 19 (emphasis added).  Thus, irrespective of what Arbitrator Gianoulakis said or did not say to the parties, it is clear that MEMC had full notice that equitable considerations were central to this case.

The same is true with respect to the award of attorneys' fees.  Pirooz continuously requested attorneys' fees in this matter, including in its Answer to MEMC's Demand for Arbitration, its Pre- and Post-Arbitration Briefs and orally at the Arbitration hearing.  Ex. 2, pp. 5-6; Ex. 3, p. 15; Ex. 4, pp. 40-46.  Moreover, as is evident from the fact that both MEMC and Pirooz filed affidavits and memoranda supporting the amount of attorneys' fees and costs they claimed, Arbitrator Gianoulakis specifically requested that Pirooz and MEMC do just that. Pirooz Exs. 11, 12, 13.  In other words, MEMC had **actual knowledge** both that (1) Pirooz was seeking attorneys' fees and (2) that the Arbitrator was would consider that request should Pirooz prevail.  It is disingenuous, to the say the least, for MEMC to now feign ignorance as to what was said by the Arbitrator at the hearing simply because its current attorney was not present at

4

the Arbitration hearing.  Even if MEMC's current representatives truly do not know what transpired at the hearing, that does not change the fact of what did transpire and nor does it change the fact that the available record is consistent with those facts.

MEMC complains that the undisputed facts of Arbitrator Gianoulakis' instructions or requests to the parties are outside of the record and cannot be considered by the Court.  MEMC further excoriates Pirooz for challenging MEMC's use of facts outside of the record.  There is a fundamental difference between MEMC's attempt to get this Court to consider a new presentation of facts supporting MEMC's substantive claims in the Arbitration (the presentation about which Pirooz objected in his Memo. in Opposition) and Pirooz pointing out the existence of an event at the hearing about which both MEMC and Pirooz are well aware.  Indeed, Pirooz objected to MEMC's factual presentation in its Memorandum in Support, not only because it was outside of the record, but also because it was inaccurate and because it re-argued facts already considered by Arbitrator Gianoulakis.  In the case of what *actually occurred* at the hearing, MEMC does not contest the efficacy of the fact that the Arbitrator asked the parties to address the equities in their briefs, but instead asserts its own purported ignorance of what actually transpired at the Arbitration.  MEMC Reply, p. 8.  The fact of Arbitrator Gianoulakis' instructions to the parties is not a disputable one.  MEMC cannot be permitted to hide behind its decision to hire new counsel.

Moreover, MEMC's overall position on the waiver issue defies common sense.  Indeed, it would be unreasonable to permit MEMC to, on the one hand, proclaim ignorance as to what it knew and what it had notice of during the Arbitration proceedings and, on the other hand, simultaneously argue that it cannot be said to have waived its arguments based on the notion that a party cannot waive arguments on issues about which it did not have notice.  In other words,

although even MEMC cannot proclaim that it lacked notice and does not even substantively contest the fact that it had notice, it wants the *Court* to proclaim that it lacked notice.  MEMC's position is untenable.[2]

        2.      <u>The Case Law Cited by the Parties Dooms MEMC's Argument Against Waiver</u>

As it turns out, MEMC's position on the issue of waiver is entirely undercut by its concession that the case law cited by Pirooz in support of his waiver argument "involved arbitration participants who failed to raise an issue pertinent to the claim at arbitration which they later attempted to argue on review."  MEMC Reply, pp. 5-6.[3]  That is precisely what MEMC has done.  MEMC confuses what *it* claimed (a purportedly "simple claim for money damages for breach of contract," MEMC Reply, p. 6) with the defenses and issues *raised by Pirooz* that were pertinent to MEMC's claim, and, more importantly, acknowledged as relevant and central to the case by Arbitrator Gianoulakis and the parties in their pleadings submitted to the Arbitrator.  Pirooz Memo. in Opp., pp. 14-18.

---

[2]    Should the Court view this issue as both material and in genuine dispute, Pirooz would suggest a brief evidentiary hearing in which the sole issue of what the Arbitrator said to the parties at the hearing could be addressed by testimony of the Arbitrator.  Of course, MEMC could resolve any factual dispute by simply owning-up to what it knows to be the facts (or what it could confirm by simply contacting its prior counsel and other MEMC attendees at the Arbitration).  Also, the record is entirely consistent with the fact of MEMC's notice of the issues at hand and counsel for Pirooz would gladly stake their good standing with this Court on such assertions.

[3]    MEMC also cites to *Middlesex Mutual Life Insurance Co. v. Levine* in support of its argument that no waiver has occurred.  675 F.2d 1197 (11th Cir. 1982).  *Middlesex* is distinguishable on its face.  In that case, one of the parties challenged the arbitration award on the grounds that the arbitrator lacked the requisite impartiality.  However, the facts supporting such an argument only became apparent after the arbitration in that case had concluded.  Moreover, the arbitrator had actually withheld material information that he had a duty to disclose concerning his partiality.  *Id.* at 1202-04.  All of the material facts putting MEMC on notice were known by MEMC during the Arbitration and prior to MEMC filing its Post-Arbitration brief with the Arbitrator.

6

MEMC's argument that it could not know that the two issues at hand were relevant is similar to the argument made by the party seeking vacatur in *Ganton Technologies*, but rejected by the Seventh Circuit Court of Appeals. *Ganton Technologies, Inc. v. Int'l Union, United Auto., Aero., and Agricult. Workers of Amer., U.A.W., Local 627*, 358 F.3d 459, 462-63 (7th Cir. 2004). However, in *Ganton Technologies*, the party moving for vacatur had even less express notice of the issue for which a waiver was found. In that case, the plaintiff-moving party, Ganton, was a company that had lost a labor arbitration with a union. *Id.* at 463-64. Ganton argued before the District Court that it was not the "Company" as defined in the applicable collective bargaining agreement ("CBA") and that, as a result, the arbitrator incorrectly found against Ganton. *Id.* Ganton argued that the arbitrator exceeded his authority when he ignored that definition in the CBA, while the union responded that Ganton waived that argument because he failed to make it during arbitration. Ganton replied that its omission of the argument at arbitration "was excusable because neither party believed the definition to be at issue." *Id.* at 463. Ganton apparently took the circular position taken by MEMC now: that because Ganton purportedly could not have anticipated that the arbitrator would ignore language in the contract, it could not have anticipated needing to make the argument. *Id.* However, indicated the Court, precisely because the parties knew that the definition of "Company" would be important to the Arbitrator's ruling, they were required to raise the issue in arbitration, irrespective of whether the parties believed (then or later) that their position was a "slam dunk" on that issue. *Id.*[4] In this case, MEMC had actual notice that Pirooz was arguing the equities as a basis of his defense and that Pirooz was seeking attorneys' fees in the event that he should prevail. Despite the professed purported ignorance of

---

[4]   An import of the *Ganton Technologies* decision is that the purported straightforward nature of an issue does not relieve a party of its obligation to argue its position in arbitration in order to avoid a waiver.

7

MEMC (which in any event could be cured by phone calls to its representatives whom attended the hearing), MEMC also had actual notice that the two issues at hand were important to the Arbitrator's decision-making process.  MEMC's complaint that it could not have anticipated that Arbitrator Gianoulakis would exceed his authority is a non-starter and circularly avoids the fact that MEMC had sufficient notice of the issues at hand.

MEMC waived its ability to obtain vacatur of the Award because he failed to raise his arguments during the Arbitration.  *See* Pirooz Memo. in Opp., pp. 11-12, 14-18.  Allowing MEMC to present its new arguments now would completely undermine the arbitration process, which is designed as an *alternative* to litigation, not as a first bite at the apple for litigants.  As such, its Motion to Vacate must be denied and Pirooz's Complaint for Confirmation confirmed.

**B.     MEMC Misinterprets the "Manifest Disregard of the Law" Standard of Review.**

MEMC is incorrect when it argues that a legal principle clearly identified in the Arbitration was ignored by Arbitrator Gianoulakis.  Reply, pp. 3, 18-19.  As stated in Pirooz's Memorandum in Opposition, "an arbitration decision only manifests disregard for the law where the arbitrators **clearly identify the applicable governing law and then proceed to ignore it**."  *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461-62 (8th Cir. 2001) (citing *Stroh Container Co. v. Delphi Industries*, 783 F.2d 743, 749-50 (8th Cir. 1986)) (emphasis added); s*ee also Electrolux Home Products v. The United Automobile Aerospace & Agricultural Implement Workers of America*, 416 F.3d 848, 853 (8th Cir. 2005) ("[t]hat a court is __convinced__ [the arbitrator] committed serious error does not suffice to overturn his decision") (internal citation omitted) (emphasis added); *Stark v. Sandberg Phoenix & Von Gontard, P.C.*, 381 F.3d 793, 802 (8th Cir. 2004); Pirooz Memo. in Opp., pp. 10-11, 25-29.  Moreover, in *Stark*, the Eighth Circuit succinctly defined this standard of review.  The party seeking vacatur based on manifest

8

disregard of the law "bears the burden of proving that the arbitrators were **fully aware** of the existence of a **clearly defined legal principle**, but **refused to apply it**, in effect, **ignoring it**." 381 F.3d at 802 (internal citations and quotations omitted) (emphasis added).

Pirooz's position on this issue is well-stated in its Memorandum in Opposition, but briefly summarized, MEMC has still failed to point to any *legal principle* about which the arbitrator was fully aware but **ignored** by him. With regard to Arbitrator Gianoulakis' additional holding that it would be inequitable to award a forfeiture under the circumstances (assuming, *arguendo*, that such an argument was not waived), MEMC never identified the purported legal principle at Arbitration that it now alleges was not followed by Gianoulakis: that a forfeiture provision in a non-compete agreement "is valid and enforceable" and "does not require a determination of whether the forfeiture of benefits is fair, reasonable and enforceable." MEMC Memo. in Supp., pp. 21-22.

MEMC now tries to argue that its statement in its Memorandum in Support that, early on in his decision, Arbitrator Gianoulakis "correctly recognized that this is an action for damages by MEMC for the alleged breach of contract by Pirooz," showed that the Arbitrator was somehow clearly identifying a "legal principle" that he also ignored. This argument is meritless on its face. Certainly, by acknowledging the existence of a breach of contract action, Mr. Gianoulakis was not also acknowledging that he was "fully aware" of a broad range of legal principles that could be raised in that action. Such a finding would fly in the face of this standard, as set forth in the case law. *See*, *e.g*., *Stark*, 381 F.3d at 802.

Indeed, in *Stark*, the party moving for vacatur argued to the reviewing District Court that the arbitrator had manifestly disregarded the law in issuing an award of punitive damages. The legal principles the plaintiff-moving party alleged were both identified and ignored by the

9

Arbitrator were those enunciated in Supreme Court precedent concerning the appropriate method of measuring punitive damages. *See*, *e.g*., 381 F.3d at 802. Although the complainant in the arbitration clearly requested "punitive damages" as relief, and although other issues related to the complainant's contractual right to seek those damages were raised and argued, the Eighth Circuit held, in part, that, because the legal principles argued by the moving party before the District Court had not been clearly articulated in the Arbitration, the Arbitrator could not be said to have "manifestly disregarded the law." *Id.* Under *Stark*, MEMC's argument fails.[5]

Finally, it is apparent that MEMC is merely repackaging its argument that Arbitrator Gianoulakis purportedly ignored the terms of the contract (as opposed to ignoring the law). That allegation is more appropriately addressed by the standard of review for contract interpretation and the standard of review concerning the scope of the Arbitrator's authority. Those standards have already been adequately addressed in Pirooz's Memorandum in Opposition and have not been contested by MEMC. Pirooz Memo. in Opp., pp. 10-11, 18-20, 29-33.

C.      **The Scope of the Arbitrator's Authority to Issue an Award in Equity Was Extremely Broad, Pursuant to AAA Rule 34(d).**

MEMC argues, in part, that because the Agreement between Pirooz and MEMC states that "*procedurally*" the AAA Rules are applicable to any dispute between the parties, the provisions of the Rules providing for the scope of the Arbitrator's authority are inapplicable and that, instead, the terms of the parties' Agreement (*sans* the Rules) apply. MEMC Reply, pp. 11-14. MEMC's argument is contradicted by the fact that, by even using the AAA in the first place,

---

[5]   This analysis is equally applicable to MEMC's argument that the Arbitrator's award of attorneys' fees was in manifest disregard of the law. MEMC Reply, p. 19. *See also* Pirooz Memo. in Supp. With respect to the attorneys' fees issue, MEMC is trying to repackage the Arbitrator's recitation of facts (*i.e.,* contract language) and interpretation of a contract as a statement of the law. The Court should reject MEMC's incorrect application of the "manifest disregard of the law" standard.

MEMC *de facto* consented to the AAA Rules being a part of the parties' arbitration agreement. Pirooz Ex. 9, p. 5, AAA Rule 1. The AAA Rules also provide that, to the extent there is a material inconsistency between the parties' agreement and the AAA Rules, the AAA Rules apply. *Id.*[6]

Even assuming, *arguendo*, that MEMC is correct about the meaning of the word "procedurally" in the parties' Agreement, and further assuming, *arguendo*, that the Agreement did not permit the consideration of equitable principles,[7] the true import of MEMC's argument is simply that there is a material inconsistency between the AAA Rules and the parties' Agreement. Again, the AAA Rules (all of them) are deemed terms of the parties' Agreement. In other words, MEMC has merely illustrated to the Court that, at best, the parties agreed to contradictory terms.

---

[6] This issue only further underscores the need to give extraordinary deference to the Arbitrator's decision and, at the same time, not to allow MEMC to make arguments that it could have made in Arbitration. Indeed, in support of his argument that AAA Rules and the parties' Agreement should be interpreted not to permit the award issued, MEMC complains that even the Arbitrator did not cite to or discuss the AAA Rules. MEMC misses the point that, had it raised its arguments at Arbitration, the Arbitrator could have performed an analysis of the issue. However, with full knowledge that the equities were being argued by Pirooz and considered by the Arbitrator, MEMC either did not spot the issue or did not believe raising it would be strategically appropriate. Either way, to allow MEMC to make its argument now would be to usurp the role of the Arbitrator and the arbitration process.

[7] Pirooz in no way concedes these two points. The general term, "Procedurally," without any acknowledgement or mention of the fact that the AAA Rules contain several explicit terms relating to the appropriate remedies in the case, cannot trump and supersede those explicit terms. Moreover, as argued in Pirooz's Memorandum in Opposition, even the Agreement itself provides that the Arbitrator may award "other relief" consistent with the claim asserted. Pirooz Memo., p. 19. Construed in light of the extraordinary deference granted to the Arbitrator by this Court, that provision permitted the Arbitrator to award the "other relief" sought by Pirooz. *Id*. at pp. 18-25.

11

As the drafter of the Agreement, that contradiction should not only be resolved against MEMC, but, more importantly, in favor of the AAA Rules.  Pirooz Ex. 9,  p. 5, AAA Rule 1.[8]

## CONCLUSION

For the reasons stated herein, and as stated in Pirooz's Memorandum in Opposition to MEMC's Motion to Vacate, the Court should deny MEMC's Motion and confirm the Arbitration Award.


Respectfully submitted,

ARMSTRONG TEASDALE LLP

By: */s/* E.W. Gentry Sayad
    E.W. Gentry Sayad, #42558
    Michael B. Kass, #94212
    One Metropolitan Square, Suite 2600
    St. Louis, Missouri 63102-2740
    (314) 621-5070
    (314) 621-5065 (facsimile)

ATTORNEYS FOR PLAINTIFF

---

[8] The majority of MEMC's arguments in its Reply are already adequately refuted in Pirooz's Memorandum in Opposition.  By not specifically challenging any argument or citation to case law in MEMC's Reply, Pirooz in no way concedes those arguments.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of January, 2006, a true copy of the foregoing was served via electronic notification, through the Court's ECF system, upon:

Kevin A. Sullivan
Christopher K. Geldmacher
3415 Hampton Ave.
St. Louis, Missouri 63139
ksullivan@sselaw.net
cgeldmacher@sselaw.net

and

Robert Schultz, Esq.
Schultz & Little, LLP
640 Cepi Drive, Suite A
Chesterfield, Missouri 63005

                                            */s/*  E.W. Gentry Sayad