UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | | |
|---|---|---|
| SAEED PIROOZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05MC521 CDP |
| | ) | |
| MEMC ELECTRONIC MATERIALS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM AND ORDER

Plaintiff Saeed Pirooz seeks to confirm an arbitration award entered in his

favor and against his former employer, defendant MEMC Electronic Materials, Inc.

MEMC had alleged that Pirooz violated certain employment agreements by going to

work for a competitor. The arbitrator found for Pirooz, denied MEMC's claims,

and ordered MEMC to pay Pirooz's attorneys fees. MEMC seeks to vacate the

award. I conclude that the arbitrator did not exceed the scope of his authority, that

the award draws its essence from the parties' contract, and that the arbitrator

correctly applied the law. I will therefore deny the motion to vacate and confirm the

arbitration award.

## I.     Background

### A.     The Parties and Relevant Agreements

MEMC Electronic Materials, Inc. is a leading manufacturer and supplier of silicon wafers used to make semiconductors for the computer and electronics industries.  Saeed Pirooz began working for MEMC in July of 1990.  He worked his way up in the company until he was promoted to Vice President of Corporate Technology in February of 2002.  Shortly thereafter, in July of 2002, MEMC terminated Pirooz's employment with the company.  Fifteen months later, Pirooz began working for Soitec USA, Inc. as National Director of Sales.  Soitec produces Silicon-on-Insulator ("SOI") wafers and other substrates using a patented technological process.

Because MEMC competes in an industry dependent on the protection of confidential and proprietary information, it required Pirooz to sign confidentiality agreements over his years of employment and at his termination.  After Pirooz began working for Soitec, MEMC filed a demand for arbitration against Pirooz, claiming that Pirooz's new employment violated restrictive covenants in these employment agreements, and sought forefeiture of the severance benefits MEMC had paid Pirooz.  Three agreements are relevant to this case: a Confidentiality Agreement dated September of 2000, an Employment Agreement dated February 1, 2002, and a

Severance Agreement dated August of 2002.

The Confidentiality Agreement provided that Pirooz would not use MEMC's confidential information, and that he would not work for a competitor for two years after leaving MEMC. The later-executed Employment Agreement reaffirmed these obligations. In the Severance Agreement, Pirooz released and waived any claims against MEMC and in exchange received his base salary for one year, a letter of reference from MEMC's senior vice president of human resources, and permission from MEMC to state that his departure from the company was voluntary on his part. The Severance Agreement reaffirmed the confidentiality and non-competition promises Pirooz had made to MEMC in the two prior agreements and provided for forfeiture of all severance benefits if Pirooz breached those obligations.

The Severance Agreement provided that any dispute between the parties in relation to Pirooz's employment would be resolved by an arbitrator under the rules of the American Arbitration Association. It also provided that the arbitrator "shall have the authority to award costs of the Arbitration (including attorney's fees) in a manner consistent with the controlling substantive claim at issue," and also provided for reimbursement of reasonable costs, including attorney's fees for "enforcing or defending [a party's] rights under this Agreement."

## B.    The Arbitration

The arbitrator heard evidence over two and a half days in May of 2005.

Both parties submitted pre-hearing briefs.  No transcript was made of the testimony

and argument at the hearing.  MEMC alleged that Pirooz's employment with Soitec

violated the agreements, and it sought forfeiture of all severance payments,

prejudgment interest at 9%, arbitration expenses, and legal fees.  Pirooz contended

that he did not breach the agreements with MEMC.  He argued that Soitec is not a

competitor of MEMC under the terms of the agreement, because Soitec did not have

a product "competitive with or similar to" a product of MEMC's during the five

years prior to his termination.  Pirooz sought attorneys' fees and arbitration

expenses.  Both parties were represented by counsel during the hearing.

The arbitrator concluded that MEMC had failed to carry its burden of

showing that Pirooz breached the contract.  Specifically, he found that Soitec was

not a competitor of MEMC.  He based this conclusion on a variety of factors,

including the fact that during Pirooz's employment MEMC had only manufactured

EPI wafers, which were not competitive with Soitec's SOI wafers.  Although

MEMC was developing a SOI wafer, up through the time of the hearing it had not

manufactured any that had "qualified" to be sold to a customer.  The arbitration

award also referred to equitable principles in discussing the forefeiture request:

The claim of MEMC will be denied in its entirety for the reasons stated hereafter. [MEMC] had the burden of proving a breach of the Agreement. [MEMC] further had the burden of proving that it was entitled to enforce the forfeiture provision of paragraph 8. "Equity abhors forfeitures and they are not favored at law." See Sebree v. Rosen, 374 S.W.2d 132 and 140 (Mo., Div. 2, 1964). See also, Hawkins v. Foster, 897 S.W.2d 80 at 85 (at keynotes 3-5) (Mo.App. S.D. 1995) and numerous other cases to same effect collected at Mo. Digest 2d, Vol. 9, Contracts, Key No. 318. Forfeitures are to be prevented when it is "inequitable to allow a forfeiture to be enforced." Sebree v. Rosen, supra, at 140.

. . .

Under all the circumstances brought out in the hearing, it would be unfair and inequitable to enforce this forfeiture as either a legal or equitable remedy. See Sebree v. Rosen and Hawkins v. Foster, supra., p. 3.

Based on all the evidence, the undersigned finds all of the issues against [MEMC] and in favor of [Pirooz] and denies all of [MEMC's] claims in this Arbitration and dismisses those claims with prejudice.

Def.'s Ex. 46 at 3, 8-9.

The arbitrator awarded attorneys fees to Pirooz in the amount of $106,832.69, which was approximately ten percent less than Pirooz had requested. He also ordered MEMC to reimburse Pirooz $6,649.50 for arbitration costs. MEMC has not paid either amount.

## II.     Discussion

### A.     Standard of Review

This case is brought under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, which established "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Pirooz seeks confirmation of the arbitration award under 9 U.S.C. § 9 of the FAA, which states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

In response, MEMC seeks an order of vacatur. The FAA allows this Court to vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition to the four grounds for vacatur stated above, the Eighth Circuit has recognized two additional rationales for vacating an arbitration award:

> First, a court can vacate an arbitration award if it is "completely irrational," which means "it fails to draw its essence from the agreement." An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intention. Second, a court can vacate an arbitration award if it "evidence[s] a manifest disregard for the law." An award manifests disregard for the law when an arbitrator clearly identifies the applicable, governing law, but then ignores it.

McGrann v. First Albany Corp., 424 F.3d 743, 749 (8th Cir. 2005) (internal citations omitted) (quoting Schoch v. InfoUSA, Inc., 341 F.3d 785, 788 (8th Cir. 2003)).

Under the law of this Circuit, the scope of my review of an arbitration award is extremely narrow, and my sole function is to decide whether the arbitrator's decision draws its essence from the contract. Executive Life Ins. Co. of New York v. Alexander Ins. Ltd., 999 F.2d 318, 320 (8th Cir. 1993). Federal courts are not authorized to reconsider the merits of an arbitral award, "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the

contract." Bureau of Engraving, Inc. v. Graphic Communication Int'l Union, Local 1B, 284 F.3d 821, 824 (8th Cir. 2002) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987)).  I must confirm the award even if I am convinced that the arbitrator committed serious error, so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Bureau of Engraving, 284 F.3d at 824 (quoting Misco, 484 U.S. at 38). To put it another way, I will not set an award aside simply because I might have interpreted the agreement differently or because the arbitrator erred in interpreting the law or even in determining the facts.  Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 751 (8th Cir. 1986).  Rather, for an award to be set aside the contract must not be "susceptible of the arbitrator's interpretation." Metal Shop, Warehousemen, and Helpers Union, Local 970 v. B F. Nelson Folding Cartons, Inc., 151 F.3d 748, 750 (8th Cir. 1998) (quotation omitted).

### B.     The Arbitrator Did Not Exceed His Authority In Denying MEMC's Claims

MEMC argues that the arbitration award should be vacated because the arbitrator exceeded the power granted to him in the agreement between the parties. This power was allegedly exceeded when the arbitrator: (1) incorrectly considered equitable principles in disregard of Missouri contract law; (2) failed to enforce the

terms of the agreement between the parties; and (3) awarded attorneys' fees without authority under the agreement between the parties or Missouri law.

My narrow function is to determine whether the arbitrator's decision draws its essence from the contract. I find that it does. The Severance Agreement requires a finding that MEMC had a product, process, apparatus, service or development "competitive with or similar to" a product of sold by Soitec. Even MEMC admits that to decide whether Pirooz's employment with Soitec breached the contract "the arbitrator had to determine whether Soitec manufactured or sold a product which was 'competitive with or similar to' a product of MEMC." Def.'s Memo in Supp. at 23. It is undisputed that it was within the arbitrator's authority to examine the facts and determine if such a relationship existed between MEMC and Soitec products. I can not set aside this award simply because I might have interpreted the agreement differently or because I think the arbitrator erred in interpreting the law or in determining the facts. Stroh Container Co., 783 F.2d at 751.

The arbitrator considered all the evidence and arguments and concluded that there was no breach of contract:

> [MEMC] has failed to carry the burden of proving that while [Pirooz] worked for MEMC it had a product, process, apparatus, service or development "then competitive with or similar to a product" sold by Soitec. . . . [Pirooz] did not breach the agreement with MEMC.

Def.'s Ex. 46 at 5.  Alone, this factual finding of a lack of a similar or competitive product is enough to support a denial of all of MEMC's claims.  This Court can not and will not overrule the arbitrator's findings of fact.  <u>Bureau of Engraving</u>, 284 F.3d at 824.

### 1. The Arbitrator's Discussion of Equitable Principles is Not a Basis for Vacating the Award

MEMC alleges that the arbitrator improperly considered equitable factors in determining the breach of contract issues.  In applying equitable principles and imposing equitable requirements that were not part of the agreement between the parties, MEMC argues, the arbitrator exceeded the power granted him.[1] Admittedly, the arbitrator's decision contained a lengthy recitation of the facts of the parties' relationship, and discussed the equities of allowing or not allowing forfeiture.  I do not believe that this discussion somehow invalidated the decision, however.

Arbitrator Gianoulakis stated that "it would be unfair and inequitable to enforce [the] forfeiture as either a legal or equitable remedy." This appears to be

---

[1] The Court notes that MEMC seemed to support an evaluation based on fairness in the arbitration when it stated in its post-arbitration brief: "[I]t is universally **unfair** for Dr. Pirooz to receive and keep the benefits when he did not keep his promises. . . . It is not **unfair** to require someone to keep his promises nor is it **unfair** to get your money back when promises are not kept."  Def.'s Ex. 44 at 19 (emphasis added).

simply a statement of why the arbitrator did not see his conclusion as an unjust one.

Nothing in the opinion indicates that the equities influenced his factual findings that

Soitec and MEMC had no competitive or similar product. The equitable issue is

mentioned in only a few sentences and is simply additional support for the

arbitrator's result. Overall, the arbitrator's discussion of equity and fairness

rationales is insignificant. He found that Pirooz did not breach the agreement. This

factual finding drew its essence from the agreement and is sufficient justification for

denying MEMC's claims.

### 2.     The Arbitrator Correctly Enforced the Terms of the Agreement in Line with His Factual Findings

MEMC argues that the arbitrator exceeded the scope of his authority when he

acknowledged that both Soitec and MEMC sold silicon wafers but then ultimately

concluded that Soitec did not sell a product "competitive with or similar to" a

MEMC product. There is nothing inconsistent with these findings.

Although both Soitec and MEMC manufactured silicon wafers, the arbitrator

found that the two companies had different products during the relevant time period:

Soitec sold SOI wafers and MEMC sold EPI wafers. In addition, the arbitrator

found that "SOI and EPI wafers were in different market segments because SOI

wafers sold at four to six times the cost of EPI wafers." The plain language of the

award states that "[d]uring the entire period of time that [Pirooz] worked for MEMC, MEMC did not produce, or have the capability to produce, itself any SOI wafers" and that "[u]p through the time of the hearing on this matter, MEMC still had not produced SOI wafers which had qualified with any customer for being of a quality ready for sale and use by that customer." Def.'s Ex. 46 at 4, 5. These findings draw their essence from the agreements and are within the authority of the arbitrator to decide.

### 3. The Arbitrator had the Authority to Interpret the Agreement and Order the Payment of Attorneys' Fees

MEMC alleges that the arbitrator's award of attorneys' fees to Pirooz exceeded the powers granted to him by the parties' agreement. MEMC's argument, in essence, is that although it could be awarded attorney's fees if it prevailed, Pirooz could not be awarded fees if he prevailed. Both parties provided affidavits and bills as part of the evidence at the hearing. The award points to two relevant provisions from the Severance Agreement. Paragraph 13 provides for an award of attorneys' fees in accord with the underlying substantive law:

> The Arbitrator shall have the authority to award costs of the Arbitration (including attorney's fees) in a manner consistent with the controlling substantive claim at issue. Similarly, the Arbitrator shall have the authority to award damages (or other relief) consistent with the substantive claim being asserted.

Def.'s Ex. 9 at 5-6.  Attorneys' fees are also allowed by paragraph 17 of the

Severance Agreement:

> If it is finally determined by a court or arbitrator that either party has
> violated any of the promises contained in this Agreement, then such
> party shall reimburse the other party for all reasonable costs incurred
> by the other party, including reasonable attorneys' fees, in enforcing or
> defending its rights under this Agreement.

Def.'s Ex. 9 at 6.

As discussed above, "[j]udicial review of a final arbitration award is

extremely narrow."  Trailmobile Trailer, LLC v. Int'l Union of Elec., 223 F.3d 744,

746 (8th Cir. 2000).  "As long as the arbitrator's award 'draws its essence from the

[] agreement,' and is not merely 'his own brand of industrial justice,' the award is

legitimate."  Misco, 484 U.S. at 36 (quoting United Steelworkers of Am. v.

Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  "This is especially true

when it comes to formulating remedies.  There the need is for flexibility in meeting a

wide variety of situations."  United Steelworkers, 363 U.S. at 597.

The dispute here is covered by the arbitration agreement, and the arbitrator

had the authority to award attorneys' fees incurred by Pirooz in defending the claim.

Although Missouri law does not automatically award attorneys fees in a breach of

contract case, it does allow for such fees if the contract so provides.  The Severance

Agreement's explicit reference to fees incurred in "defending" an arbitration claim

is a contractual provision of the type recognized by Missouri law.  A dispute over

whether attorneys' fees are "costs of the Arbitration" pursuant to the agreement is a

"dispute ... arising out of ... [the Severance] Agreement."  The arbitrator could hear

any issue within the framework of the agreement.  It was for the arbitrator under the

complete record made to interpret and construe the agreements and to then consider

the Severance Agreement in the context of all the evidence relevant to all of the

issues raised.

In addition, the Severance Agreement stated that the arbitration would be

governed by the Rules for Resolution of Employment Disputes of the American

Arbitration Association.  Rule 34(d) of those rules states: "The arbitrator may grant

any remedy or relief that the arbitrator deems just and equitable, including any

remedy or relief that would have been available to the parties had the matter been

heard in court."  Although not referred to by the arbitrator in the award, this broad

grant of power provides further support for the determination that the arbitrator did

not exceed his authority in granting the award of attorneys' fees.

### C.    The Award is a Mutual, Final and Definite Award

MEMC also contends that the arbitration award does not represent a "mutual,

final and definite award" because the award's explanation leads to the conclusion

that the arbitrator only considered whether MEMC had a product that was "then

competitive with" a product of Soitec, and did not consider whether MEMC's products were "similar to" Soitec's products.

The FAA terms, 'mutual' and 'final' mean "that the arbitrators must have resolved the entire dispute (to the extent arbitrable) that had been submitted to them" and 'definite' means "that the award is sufficiently clear and specific to be enforced should it be confirmed by the district court and thus made judicially enforceable." IDS Life Ins. Co. v. Royal Alliance Associates, Inc., 266 F.3d 645, 650 (7th Cir. 2001) (citations omitted).

This arbitration award is both 'mutual' and 'final.' MEMC repeatedly describes this action as a breach of contract dispute and admits that the arbitrator found that Pirooz did not breach the contract. The arbitrator correctly identified the language of the agreement at issue and made his factual findings in line with that language. These findings resolved the entire dispute submitted to the arbitrator.

"Arbitrators are not required to elaborate their reasoning supporting an award, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process." Stroh, 783 F.2d at 750 (internal citations omitted). Just because the award does not discuss the question of MEMC's products being "similar to" Soitec's, one can not assume that

the arbitrator did not consider that issue.

In addition, the award states: "This Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein are, hereby, denied."  Def.'s Ex. 46 at 11.  The arbitration award resolved the entire dispute that was before the arbitrator.

This arbitration award is also 'definite.'  The arbitrator denied all of MEMC's claims in their entirety.  This result is sufficiently clear and specific to be enforceable by this Court.  I find no grounds for vacatur of this award under section 10(a)(4) of the FAA as this award does not exceed the powers of the arbitrator and is "mutual, final, and definite."

> **D.**     **The Arbitration Award is Not Irrational and Does Not Manifestly Disregard the Law**

MEMC also seeks vacatur of the arbitration award on the grounds that the award is completely irrational and evidences a manifest disregard of applicable Missouri law.  A finding that the award is 'completely irrational' means that "it fails to draw its essence from the agreement."  McGrann, 424 F.3d at 749 (internal citations omitted) (quoting Schoch, 341 F.3d at 788).  This analysis coincides with the above evaluation of whether the arbitrator exceeded his authority, in that both were considerations of whether the arbitrator's decision drew its essence from the

contract.  For the reasons stated above, when all aspects of the arbitration award are viewed in light of the Severance Agreement's language and context, I find that the arbitrator's findings are derived from the agreement, and the award is not irrational.

MEMC also argues that the award should be vacated for evidencing a manifest disregard for the law.  The arbitrator allegedly manifested this disregard by discussing equitable principles in a contract case and by awarding attorneys' fees.

"An award manifests disregard for the law when an arbitrator clearly identifies the applicable, governing law, but then ignores it."  McGrann, 424 F.3d at 749 (internal citations omitted) (quoting Schoch, 341 F.3d at 788).  After the arbitrator decided that Pirooz had not breached the agreement and that there was no basis for the forfeiture, he went on to explain the fairness of this decision.  Most judges and arbitrators hope that their decisions are not only correct, but also fair. Nowhere in the arbitration award does the arbitrator point to an applicable governing law in Missouri and then directly defy that legal principle.  The arbitrator's findings demonstrated no manifest disregard of Missouri law.

 Similarly, the arbitrator identified the two contract provisions addressing attorneys' fees and interpreted those provisions to allow fees in this case.  This Court will not overrule his interpretation.  MEMC argues that Missouri contract law only allows for an award of attorneys' fees to the prevailing party when the contract

provides for them.  In this case, the arbitrator found that the contract between the parties, the Severance Agreement, allowed for an award of attorneys' fees to Pirooz. It was within his authority to interpret the agreement and this interpretation does not manifestly disregard any Missouri law.

## III.   Conclusion and Prejudgment Interest

Under the Eighth Circuit's deferential standard of review of arbitration awards, this Court has no authority to set aside an arbitration award even if the Court finds the arbitrator erred in interpreting the law or in determining the facts. Stroh Container Co., 783 F.2d at 751.  There are no grounds on which the arbitration award should be vacated and instead it shall be affirmed.

Pirooz also requested prejudgment interest, attorneys' fees and costs in his complaint seeking confirmation.  I will take up the issue of attorneys' fees and costs in accordance with the Court's local rules and therefore do not address Pirooz's request for these amounts at this time.  See E.D.Mo. L.R. 8.02, 8.03.  Prejudgment interest is generally available in a case such as this:

> As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due.  Awarding prejudgment interest is intended to serve at least two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where

> liability and the amount of damages are fairly certain, to promote
> settlement and deter attempts to benefit unfairly from the inherent
> delays of litigation. Thus, prejudgment interest should ordinarily be
> granted unless exceptional or unusual circumstances exist making the
> award of interest inequitable. Such circumstances may include bad
> faith or dilatoriness by the claimant, or a claimant's assertion of
> frivolous claims.

Stroh Container Co., 783 F.2d at 752 (internal citations omitted).

After considering the relevant factors, I find that an award of prejudgment interest is appropriate. Pirooz has been denied the use of the unreimbursed attorneys' fees and costs, totaling $113,482.19, since the arbitration award was issued on July 8, 2005. Merely confirming the award without granting the request for prejudgment interest would fall short of affording Pirooz complete relief. Finally, I find no exceptional or unusual circumstances that would justify the denial of prejudgment interest. Accordingly, I will grant Pirooz's request for prejudgment interest. As requested by Pirooz, I will apply the Missouri prejudgment interest rate of 9% per annum. Through today's date, the amount of interest is $6,771.16, so the total judgment is in the amount of $120,253.35.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Pirooz's complaint for confirmation of arbitration award [#1] is GRANTED.

**IT IS FURTHER ORDERED** that defendant MEMC's motion to stay [#4]

is DENIED as moot.

**IT IS FURTHER ORDERED** that defendant MEMC's motion to vacate the

arbitration award [#5] is DENIED.

A separate judgment in accord with this order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2006.